# **APPENDIX A**

# **EXHIBIT B**

Prepared by: TRACY PANOYRZ

**Countrywide Mortgage Ventures, LLC dba First Freedom Mortgage**

DATE: 08/24/2005
BORROWER: ROLANDO MANLANGIT
CASE #:
LOAN #:
PROPERTY ADDRESS: ████████████████████

Branch #: 0060466
380 E. 8th Street
Dundee, IL 60118
Phone: (847) 636-4620
Br Fax No.: (847) 428-4093

## HOME EQUITY CREDIT LINE AGREEMENT AND DISCLOSURE STATEMENT
## THIS LOAN IS SECURED BY A JUNIOR MORTGAGE

Date: AUGUST 25, 2005

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
Countrywide Mortgage Ventures, LLC dba First Freedom Mortgage
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
Countrywide Mortgage Ventures, LLC dba First Freedom Mortgage

**1. LOANS; DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 5 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 12.B, 12.D, 13.B or 16.A below.) You will not make any loan before the fourth business day following the signing of this Agreement, except to the extent of proceeds of this loan that are for the purchase or initial construction of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 13.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement (up to my Available Credit Limit) by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) if you issue an access card ("Card"); by honoring advances I request by using the Card at any Merchant or sevicer provider ("Merchant") or any participating automated teller ("ATM") networks; (iii) paying closing costs and finance charges in accordance with paragraph 8.C below; (iv) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (v) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (vi) any other method or procedure you establish.

**3. SPECIAL CARD TERMS AND CONDITIONS.** I understand that you, in your sole discretion and at your sole option, may cause to be issued a Card, as an access device and an additional means by which I may obtain advances under the Account. By applying for the Account, I have requested that you issue the Card to me if my application is approved, and if you, at your option and in your sole discretion, provide access to my Account by the Card after the Account is opened. If one or more Cards are issued to me as a means of obtaining loan advances on my Account, I agree that my use of the Card and any related loan advances will be governed by the following terms and conditions unless I cancel my card within [30] days of receiving the Card and have not authorized the use of the Card or Card account number. I also agree to comply with any agreement between me and the Card issuer:

A. Account Access. In addition to any means by which I may access my Account as described in the Agreement, I may be permitted to obtain (up to my Available Credit Limit) loan advances by using my Card you provide, at any merchant or service provider ("Merchant") that allows me to use the Card to pay for goods or services. If you provide

HELOC - IL Agreement & Disclosure Statement
2C565-IL (05/05)(e)                Page 1 of 10



LOAN #: ▮▮▮▮▮▮

me with a Personal Identification Number ("PIN"), I may also obtain loan advances by using the Card at participating automated teller machine ("ATM") networks. I agree not to write my PIN on my Card(s) or disclose it to others. If I use my Card at an ATM, I understand that the owner of the ATM may charge me a fee for the transaction. I understand that in order to use my Card at an ATM, I must call 1-800-869-5864 to request a PIN. I also understand that loan advances (whether at a Merchant or ATM) may be subject to transactional limits that could restrict the full use of my Available Credit Limit. There are no minimum draw requirements that apply when I use the Card, except for any limits that may be imposed separately by a Merchant or ATM owner. I agree that if you decide in your sole discretion to approve any transactions above my Available Credit Limit, I will be responsible for the full amount of any such advances. I understand that if I make reservations or purchases of any kind using my Card, my Account may be immediately charged for the full amount of the reservation or purchase, regardless of whether I have received the goods or services requested at the time my Account is charged.

**B. Liability.** I agree that all borrowers who have executed the Agreement are jointly and severally liable under the terms of the Agreement for any Card transactions that are posted to the Account, whether or not a Card has been issued to all borrowers.

**C. Authorizations.** All Card transactions are processed through the applicable bankcard networks that are branded on the Card ("Bankcard Networks") according to the requirements and procedures of the Bankcard Networks. Some Card transactions may require prior authorization by you or pursuant to the requirements and procedures of the Bankcard Networks before they are approved for processing. The Bankcard Networks may refuse to process any Card transaction if it appears to be illegal or fraudulent, or if the Merchant or the transaction does not otherwise meet the requirements of the Bankcard Networks. In addition, you or the Card Issuer may deny authorization for any Card transaction if my Account has been suspended or terminated. I also agree that if you or the Card Issuer detects any suspicious or unusual use, you or the Card Issuer may suspend use of any Card.

**D. Lawful Transactions.** I agree to use my Card only for valid and lawful purposes. If I use my Card for any other purpose or transaction (herein called a "Prohibited Activity"), including, without limitation, gambling activities, I agree to promptly reimburse you, the Card Issuer (if other than you) and the Bankcard Networks for all amounts or expenses paid by any such party as a result of such use. You reserve the right to block any Prohibited Activity and/or to not approve any authorization request for a Prohibited Activity. Card transactions for any Prohibited Activity made by me or for my benefit shall be considered authorized by me. You will not be liable if I engage in any Prohibited Activity using the Card, and I will be responsible for the full amount of any loan advances made in connection with such Prohibited Activity. Display by an online merchant of the service mark of any Bankcard Network branded on the Card does not mean that a Card transaction over the Internet is legal where I reside.

**E. Transactions With Merchants.** I understand and agree that: (1) if a Merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, I will be bound by that policy when I use my Card to pay for goods or services from that Merchant; (2) When using my Card to make travel or lodging reservations, I must obtain the Merchant's cancellation policy and follow it if I cancel the reservations. If I cancel, I must obtain the cancellation number that the Merchant is required to give me pursuant to the requirements and procedures of the Bankcard Networks. The Merchant may charge me for a cancelled transaction unless I can provide you with a correct cancellation number. (3) If I authorize a Merchant to charge repeat transactions to my Account without my presenting my Card for each charge, then I must notify the Merchant when I want to discontinue the repeat transactions or if my Account is suspended or closed. Otherwise, I will be responsible to you for the amount of all such repeat transactions. I understand that if my loan advance privileges or my use of the Card is suspended or cancelled for any reason, it is my responsibility to pay for such repeat transactions directly until loan advance privileges and/or Card use are reinstated. (4) If I disagree with any transaction on my monthly statement or have a dispute with any Merchant as a result of a Card transaction, I agree to comply with the section entitled MY BILLING RIGHTS – I SHOULD KEEP THIS NOTICE FOR FUTURE USE in my Agreement. I will promptly provide you with such information or assistance as you reasonably request.

**F. Foreign Transactions.** I agree to pay you in U.S. dollars. If I make a Card transaction in a foreign currency, the appropriate Bankcard Network will convert the transaction amount into U.S. dollars at the rates, and in accordance with its operating regulations in effect at the time the transaction is processed. Currently, the regulations for the Bankcard Networks provide that the currency conversion rate to be used is either a wholesale market rate selected by the Bankcard Networks or a government-mandated rate, each in effect one day prior to the processing date, plus an adjustment factor (currently 1%) established by the Bankcard Networks. The Bankcard Networks may change the currency conversion rate, and the formula used to establish that rate, from time to time. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the transaction occurred. I understand that you do not determine the currency conversion rate or the formula to establish the rate that is used by the Bankcard Networks and that you do not receive any portion of the currency conversion rate used by the Bankcard Networks.

**G. Limitation of Liability.** Your liability to me, if any, for wrongful dishonor of any loan request I make using my Card is limited to my actual damages. I also agree that you are not responsible if any transaction is not approved, whether by you, a Merchant, Bankcard Network, or a third party, even if I have sufficient credit available.

FILED DATE: 12/7/2018 10:19 AM   2018CH15226

LOAN #: ▆▆▆▆▆▆▆

H. Termination/Suspension of Account. Upon any termination or cancellation of my Account by you or by me, or any suspension of my loan advance privileges under the Agreement, I agree that all Cards will be destroyed by me upon your instruction, or may be retrieved by you or your agent.

I. Cancellation/Expiration of Cards. I may be permitted to use the Card to access my account only so long as the access card program remains active and you permit me to participate in the program. If more than one person has executed the Agreement, any one of us may request that our Cards be cancelled. The request, at your option, may be made verbally or in writing. You may also cancel any Card at your sole discretion at any time, including if (1) the contracts with current or future providers of services used to operate the Card program expire or are terminated; or (2) I have not used my Card to obtain a loan advance on my Account at least once during any 12 month period; (3) my card is lost, stolen, or otherwise subject to unauthorized use; or (4) any part of the Program, including use of the Card, is prohibited by applicable law. I understand and agree that the terms governing my ability to obtain loan advances during the initial Draw Period and any renewed Draw Period are set forth in the Agreement and that those terms supercede any inconsistent expiration date(s) printed on any Cards that are issued to me to the extent that such expiration date(s) is (are) later than the expiration date of any Draw period defined in the Agreement.

J. Lost or Stolen Cards. I agree to promptly notify you at 1-800-555-5678 if any Card is lost or stolen, or if I suspect unauthorized use. You reserve the right not to honor any loan advance request made using a Card if any of my Cards has been cancelled or reported lost or stolen.

K. Unauthorized Transactions. I will not be liable for the unauthorized use of my Card. I agree to assist you in your investigation of any claims of unauthorized Card transactions and understand that I may be required to provide you with a written statement and/or an Affidavit of Forgery. I agree that if I permit a person to use the Card or Card account number, or if I benefit from another person's use of the Card or Card account number, such use is not unauthorized use of the Card, even if I did not intend to be responsible for such use.

L. Special Rule for Card Purchases. The following is in addition to the notice at the end of the Agreement entitled MY BILLING RIGHTS – I SHOULD KEEP THIS NOTICE FOR FUTURE USE:

Special Rule for Card Purchases.

If I have a problem with the quality of property or services that I purchased with my Card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) I must have made the purchase in my home state or, if not within my home state, within 100 miles of my current mailing address; and

(b) The purchase price must have been more than $50. These limitations do not apply if you or the Card issuer own or operate the merchant, or if you or the Card issuer mailed me the advertisement for the property or services.

## 4. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement at the end of each billing cycle in which there is a debit or credit balance of more than one dollar ($1.00) or in which a finance charge has been imposed. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or part of my "New Balance" at any time, subject to an Account Termination Fee or Low Balance Fee, as applicable, as described in paragraph 8.D and 7.B(6), respectively (known as a "prepayment penalty" under federal law).

D. I may pay all or any part of my "New Balance" using an Equity Credit Line Check ("Check"). If I use a Check to pay all or any part of my New Balance, I understand that:

(1) The amount of the Check will be treated as any other advance is treated under the terms and conditions of my Account. My Check will not be honored if I do not have sufficient availability on my Account.

(2) If I make a payment using a Check, my principal balance will not decrease. The principal balance will increase by the amount of the Check.

(3) Interest will accrue on the total increased principal balance when I use a Check to make a payment on my Account.

(4) I may not use a Check to make a payment once the Draw Period ends; that is, a Check may not be used to make a payment during the Repayment Period.

FILED DATE: 12/7/2018 10:19 AM    2018CH15228

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

LOAN #:

E. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 13.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

F. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my Account.

G. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

5. CREDIT LIMIT. My Credit Limit under this Agreement is $ 19,050.00                . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit. I promise not to request a reduction in my Credit Limit to an amount below $5,000.

6. ANNUAL PERCENTAGE RATE.

[X] A. The Initial Daily Periodic Rate is 0.01712 %. The Initial ANNUAL PERCENTAGE RATE is 6.250 %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 6.C below had been used, in which event the initial Daily Periodic Rate would be 0.02397 % and the initial ANNUAL PERCENTAGE RATE would be 8.750 %. These discounted rates will be in effect from the date of this Agreement until 09/30/2005                . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 6.C below.

[ ] B. The initial Daily Periodic Rate is      N/A % and the initial ANNUAL PERCENTAGE RATE is N/A %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (beginning with the first day of the first billing cycle after my "discounted" rate has expired, if applicable) according to the following procedure: The ANNUAL PERCENTAGE RATE shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 6.D below. Each billing cycle will end on the last day of the calendar month. Any new index value shall be effective as of the first day of the billing cycle in which such new index value is established.

Upon a change in the index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the ANNUAL PERCENTAGE RATE divided by 365.

D. The "Margin" to be used under paragraph 6.C above to determine my ANNUAL PERCENTAGE RATE is 2.500  percentage points.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The ANNUAL PERCENTAGE RATE will never increase above 18.000  % or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

7. FINANCE CHARGE. I agree to pay a finance charge on my Account as explained below.

A. Periodic FINANCE CHARGE.

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. Any loan advance represented by a Card transaction will be posted to my Account as of the date that you receive the transaction for processing. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. There is no grace period during which I can repay loan advances without incurring a periodic finance charge.

LOAN #:

(2) You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(3) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

**B. Other FINANCE CHARGES.**

**(1) Points FINANCE CHARGE.**

I agree to pay a Points FINANCE CHARGE of $ 0.00                        at the time I sign this Agreement.

|  | $ |
|---|---|
|  | $ |
|  | $ |
|  | $ |

**(2) Broker Fee FINANCE CHARGES.**

I agree to pay Broker Fee FINANCE CHARGES of $ N/A                    at the time I sign this Agreement.

|  | $ |
|---|---|
|  | $ |
|  | $ |
|  | $ |

**(3) Settlement Agent FINANCE CHARGES.**

I agree to pay the following Settlement Agent FINANCE CHARGES at the time I sign this Agreement:

| Closing Fee | $ | 0.00 |
|---|---|---|
| Closing/Escrow | $ | 150.00 |
| IL RENTAL HOUSING SURCHARGE | $ | 10.00 |
| Courier/Express Mail-Clsng | $ | 50.00 |
|  | $ |  |

**(4) Miscellaneous FINANCE CHARGES.**

I agree to pay the following miscellaneous Finance Charges at the time I sign this Agreement:

|  | $ |
|---|---|
|  | $ |
|  | $ |

**(5) Annual Maintenance Fee FINANCE CHARGE**

[ ] I agree to pay an annual maintenance fee FINANCE CHARGE of $ 0.00                which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $ _____ from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

[X] I will not be charged an annual maintenance fee FINANCE CHARGE on this loan.

**(6) Low Balance Fee FINANCE CHARGE**

[ ] In consideration of having an Account with a reduced Margin, I agree to maintain an Average Daily Balance of $40,000 in each monthly billing cycle during the first two years of my Account. I further agree to pay a Low Balance Fee FINANCE CHARGE of $40 for each monthly billing cycle during the first two years of my Account in which I fail to maintain an Average Daily Balance of $40,000. You will not charge me for this fee for the month in which you charge me an Account Termination Fee pursuant to the terms of paragraph 8.D.

LOAN #: ▮▮▮▮▮▮▮

**8. OTHER CHARGES.**

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this Agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within ten (10) days of the "Payment Due Date," I agree to pay a late fee of 5% of the late payment.

(2) I agree to pay a Return Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | |
|---|---|
| Recording | $ 54.50 |
| Document Preparation-Lender | $ 50.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| LESS Amounts Paid by Lender | $ 0.00 |
| Total Paid by Borrower | $ 314.50 |

C. I may elect to pay the closing costs described in paragraph 8.B above and the finance charges described in paragraph 7.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

D. ☐ I agree to pay an Account Termination Fee of $ _____ if I pay in full and terminate my Account with you and ask you to satisfy my mortgage lien on or before the _____ anniversary of this Agreement.

☒ I will not be charged an Account Termination Fee on this loan.

**9. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I, and all co-owners are giving you a Mortgage (the "Mortgage") covering my dwelling located at 640 MURRAY LN UNIT 108, DES PLAINES, IL 60016-5632 (the "Real Property"). The Mortgage is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available.

**10. SECTION INTENTIONALLY OMITTED.**

**11. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Mortgage or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**12. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 12.B below during the period that any of the following events or conditions occur:

(1) the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

(2) you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;



LOAN #:

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

(3)   I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 14 below;

(4)   government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5)   government action (such as imposition of a tax lien) impairs the priority of the lien of the Mortgage such that the value of the lien of the Mortgage is less than 120% of my Credit Limit;

(6)   the maximum Annual Percentage Rate set forth in paragraph 6.E above is reached.

(7)   you release the Mortgage at my request because I have paid all amounts outstanding under my Account.

(8)   the creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 12.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 12.A above or 13.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Mortgage is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 12.A above or 13.A below has occurred.

E. If an event or condition described in paragraph 12.A above occurs which is also an event or condition described in paragraph 13.A below, your rights and remedies described under paragraph 13.B below apply and supercede your rights described in this paragraph 12.

**13. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.**

A. You may take the actions listed in paragraph 13.B below if any of the following events or conditions occur:

(1)   I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2)   I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3)   I sell or transfer title to the Real Property without first obtaining your written permission;

(4)   I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5)   I act or fail to act and as a result a lien senior to the lien of the Mortgage is filed against the Real Property;

(6)   I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7)   All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8)   A prior lienholder on the Real Property begins foreclosure under its security document;

(9)   The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10)  I fail to pay taxes on the Real Property; or

LOAN #: ████████

(11) My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

    (a) A judgment is filed against me;

    (b) I commit waste or otherwise destructively use or fail to maintain the Real Property;

    (c) I die and I am survived by another person obligated as a Borrower under this Agreement; or

    (d) I move out of the Real Property.

B. If an event described in paragraph 13.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

    (1) you may terminate any of my rights under my Account;

    (2) you may temporarily or permanently refuse to make any additional loans;

    (3) you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

    (4) you may foreclose the Mortgage;

    (5) you may reduce my Credit Limit; and

    (6) you may take any other action permitted by this Agreement, by law or in equity.

**14. MY IMPORTANT OBLIGATIONS.** I agree that:

A. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C. From time to time, if requested, I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F. I will not use or allow use of the Real Property for any illegal purpose.

G. I will not move out of the Real Property.

H. I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Mortgage of Trust such as:

    (1) my promise not to exceed my Credit Limit;

    (2) my "Important Obligations" listed in the Mortgage; and

    (3) my promise not to request a reduction in my Credit Limit to an amount below $5,000.

**15. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**16. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. <u>Termination by Me.</u> I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 16.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 12.D above.

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

LOAN #: ▓▓▓▓▓

B. Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 12.B or 13.B above or my exercise of my suspension or termination rights under paragraphs 12.D or 16.A above.

C. Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 13.B above. I must return unused Equity Credit Line Checks to you upon termination. I may be required to pay an Account Termination Fee pursuant to paragraph 8.D above.

## 17. CHANGES TO AGREEMENT.

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

    (1)  If the original index is no longer available, you may change the Index and Margin;

    (2)  you may make any change I agree to in writing;

    (3)  you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

    (4)  you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

## 18. OTHER PROVISIONS.

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me, I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

E. Application of Payments. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Mortgage), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. Waiver of Jury Trial. I waive my right to a jury trial concerning any enforcement dispute arising under this Agreement.

H. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

LOAN #: ▮▮▮▮

I.   Waiver of Notice. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z or other applicable federal or state statutes or regulations.

J.   Meaning of Words. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K.   Payment Marked "Payment in Full." I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to Countrywide Mortgage Ventures, LLC dba First Freedom Mortgage P.O. BOX 5170, SIMI VALLEY, CA 93062-5170

L.   Enforcement. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

M.   Notices. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 18.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at Countrywide Mortgage Ventures, LLC dba First Freedom Mortgage P.O. BOX 5170, SIMI VALLEY, CA 93062-5170 or to such other address as you may designate by written notice to me as provided in this paragraph 18.M.

N.   Riders/Addenda. The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

☐ No Cost Addendum
☐ _____ Addendum
☒ Billing Rights Statement
☐ _____ Rider
☐ _____

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

Borrower: ROLANDO MANIANGIT                          Date

Borrower:                                            Date

Borrower:                                            Date

Borrower:                                            Date

● HELOC - IL Agreement & Disclosure Statement
2C659-IL (05/08)

FILED DATE: 12/7/2018 10:19 AM   2018CH15228



PAY TO THE ORDER OF

RECOURSE
ME LOANS, INC.

David A. Spector
Managing Director

PAY TO THE ORDER OF
Countrywide Home Loans, Inc.

ECOURSE
ge Ventures, LLC

David A. Spector
Managing Director

Prepared by: TRACY PANGYRZ

Countrywide Mortgage Ventures, LLC dba First Freedom Mortgage

DATE: 08/24/2005
BORROWER: ROLANDO MANLANGIT
CASE #:
LOAN #:
PROPERTY ADDRESS:

Branch #: 0000465
380 S. 9th Street
Dundee, IL 60118
Phone: (847) 836-4620
Br Fax No.: (847) 426-4093

This notice of my billing rights is a Rider to and supplements my/our Home Equity Credit Line Agreement and Disclosure Statement.

## MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

### I Must Notify You In Case of Errors Or Questions About My Bill.

If I think my bill is wrong, or I need more information about a transaction on my bill, I must write you on a separate sheet at the address listed on my bill. I must write to you as soon as possible. You must hear from me no later than 60 days after you sent me the first bill on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:

- My name and account number.

- The dollar amount of the suspected error.

- I must describe the error and explain, if I can, why I believe there is an error. If I need more information, I must describe the item I am not sure about.

### My Rights and Your Responsibilities
### After You Receive My Written Notice

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the bill was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my bill that are not in question.

If you find that you made a mistake on my bill, I will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I may have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my bill. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my bill was correct.

HELOC - Billing Rights Notice
2C482-XX (05/03)(d)

Initials:         Initials: _____

# NOTE ALLONGE

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Noteholder Endorsements to evidence transfer of interest.

**Loan Number:**

**Loan Date:** 8/25/2005    **Original Loan Amount: $   19,050.00**

**Originator:  COUNTRYWIDE MORTGAGE VENTURES, LLC DBA FIRST FREEDOM MORTGAGE**
**Original Mortgagor:  ROLANDO MANLANGIT**
**Property Address:** ████████████████████████████████

Pay to The Order of
PARTNERS FOR PAYMENT RELIEF DEIV, LLC
Without Recourse

2005 RESIDENTIAL TRUST 3-2

Id No: ██████████████

By: ████████████████████

Janell A. Junkin, Vice President

RTIRBC2/ALLONGES

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

## EXHIBIT C

Doc#. 1333608126 fee: $50.00
Date: 12/02/2013 10:28 AM Pg: 1 of 2
Cook County Recorder of Deeds
RHSP:$9.00 RPRF:$1.00 FEES Applied

Recording Requested By:
Bank of America
Prepared By: Diana De Avila
1800 Tapo Canyon Road
Simi Valley, CA 93063
800-444-4302
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823



DocID#
Tax ID:                    -1008
Property Address:

MIN #:                                MERS Phone #: 888-679-6377
This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (herein "Assignor"), whose address is P.O. Box 2026, Flint, MI 48501-2026, AS NOMINEE FOR COUNTRYWIDE MORTGAGE VENTURES, LLC DBA FIRST FREEDOM MORTGAGE, ITS SUCCESSORS AND ASSIGNS hereby assign and transfer to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE ON BEHALF OF THE CERTIFICATEHOLDERS OF THE CWHEQ INC., CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I (herein "Assignee"), whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063, and its successors and assigns all its right, title, and interest in and to a certain Mortgage described below.

Beneficiary:              MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE MORTGAGE VENTURES, LLC DBA FIRST FREEDOM MORTGAGE, ITS SUCCESSORS AND ASSIGNS

Borrower(s):              ROLANDO MANLANGIT, AN UNMARRIED MAN

Date of Mortgage: 8/25/2005          Original Loan Amount: $19,050.00

Recorded in Cook County, IL on: 9/15/2005, book N/A, page N/A and instrument number        2119

Property Legal Description:
PARCEL 1: UNIT 168 IN COUNTRY ACRES CONDOMINIUM AS DELINEATED ON A SURVEY OF THE FOLLOWING TRACT OF LAND: THAT PART OF THE WEST 1/2 OF THE NORTH WEST 1/4 (EXCEPT THE SOUTH 34 ACRES THEREOF) OF SECTION 24, TOWNSHIP 41 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, WHICH PLAT OF SURVEY IS ATTACHED AS EXHIBIT "A" TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT 21980599, AS AMENDED FROM TIME TO TIME, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS. PARCEL 2: EASEMENT FOR INGRESS AND EGRESS FOR THE BENEFIT OF PARCEL 1 RECORDED AS DOCUMENT NUMBER 22143822  P.I.N.

FILED DATE: 12/7/2018 10:19 AM    2018CH15228

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE
MORTGAGE VENTURES, LLC DBA FIRST FREEDOM
MORTGAGE, ITS SUCCESSORS AND ASSIGNS

By: _____

_____
Martha Munoz Vice President

Date _____  11-26-13

State of California
County of Ventura

On  NOV 26 2013  before me, _____ Carmen L. Morse _____, Notary Public, personally
appeared  _____ Martha Munoz _____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public:          Carmen L. Morse          (Seal)
My Commission Expires:   October 16, 2015

CARMEN L. MORSE
Commission # 1956846
Notary Public - California
Los Angeles County
My Comm. Expires Oct 16, 2015

DocID#

# EXHIBIT D

Doc#. 1800408144 Fee: $50.00
Karen A. Yarbrough
Cook County Recorder of Deeds
Date: 01/04/2018 11:09 AM Pg: 1 of 2

PREPARED BY & RETURN TO:
C. R. Hall
2860 Exchange Blvd. # 100
Southlake, TX 76092

**RECORD FIRST**

**Assignment of Mortgage**

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS
SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE ON BEHALF OF THE CERTIFICATEHOLDERS
OF THE CWHEQ INC., CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I c/o BAC, M/C: CA6-914-01-43,
1800 Tapo Canyon Road, Simi Valley, CA 93063 (Assignor) by these presents does assign and set over, without recourse, to 2005
RESIDENTIAL TRUST 3-1 117 Wrangler Drive, Suite 100, Coppell, TX 75019 (Assignee) the described mortgage with all interest, all
liens, any rights due or to become due thereon, executed by ROLANDO MANLANGIT, AN UNMARRIED MAN to MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) AS NOMINEE FOR COUNTRYWIDE MORTGAGE VENTURES, LLC DBA
FIRST FREEDOM MORTGAGE ITS SUCCESSORS AND ASSIGNS. Said mortgage Dated: 8/25/2005 is recorded in the State of IL,
County of Cook on 9/15/2005, Document # 0525832119 AMOUNT: $ 19,050.00 SEE ATTACHED EXHIBIT A
Parcel #            1008 Property Address:
IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed as a sealed instrument by its proper signatory.
Executed on: August 3, 2017
THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK,
N.A., AS TRUSTEE ON BEHALF OF THE CERTIFICATEHOLDERS OF THE CWHEQ INC., CWHEQ REVOLVING HOME EQUITY
LOAN TRUST, SERIES 2005-I
by Orion Financial Group, Inc. Attorney in Fact

By:

Connie M. Riggsby, Vice President

State of Texas, County of Tarrant
On 08/03/2017, before me, the undersigned, Connie M. Riggsby, who acknowledged that he/she is Vice President of/ by Orion Financial
Group, Inc. Attorney in Fact for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE
TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE ON BEHALF OF THE CERTIFICATEHOLDERS OF THE CWHEQ INC., CWHEQ
REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I and that he/she executed the foregoing instrument and that such execution was
done as the free act and deed of THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE
TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE ON BEHALF OF THE CERTIFICATEHOLDERS OF THE CWHEQ INC., CWHEQ
REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I by Orion Financial Group, Inc. Attorney in Fact.


JANELL JUNKIN
Notary Public, State of Texas
My Commission Expires
August 19, 2019

Notary public, Janell Junkin
My Commission Expires: August 19, 2019

IL Cook

RTIRBC2/AOM/SFR

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

# Exhibit A

PARCEL 1: UNIT 108 IN COUNTRY ACRES CONDOMINIUM AS
DELINEATED ON A SURVEY OF THE FOLLOWING TRACT OF LAND:
THAT PART OF THE WEST 1/2 OF THE NORTHWEST 1/4 (EXCEPT THE
SOUTH 34 ACRES THEREOF) OF SECTION 24; TOWNSHIP 41 NORTH,
RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK
COUNTY, ILLINOIS, WHICH PLAT OF SURVEY IS ATTACHED AS
EXHIBIT "A" TO THE DECLARATION OF CONDOMINIUM RECORDED AS
DOCUMENT 21980599, AS AMENDED FROM TIME TO TIME, TOGETHER
WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON
ELEMENTS.

PARCEL 2: EASEMENT FOR INGRESS AND EGRESS FOR THE BENEFIT
OF PARCEL 1 RECORDED AS DOCUMENT NUMBER 22143822

P.I.N. (S)            1008

Cook County,   IL                    RTIRBC2/AOM/SFR

# EXHIBIT E

Doc#: 1800408145 Fee: $50.00
Karen A. Yarbrough
Cook County Recorder of Deeds
Date: 01/04/2018 11:09 AM Pg: 1 of 2

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

PREPARED BY & RETURN TO:
C. R. Hall
2860 Exchange Blvd. # 100
Southlake, TX 76092
**Assignment of Mortgage**                    Send Any Notices To Assignee.
For Valuable Consideration, the undersigned, 2005 RESIDENTIAL TRUST 3-1  117 Wrangler Drive, Suite 100, Coppell, TX 75019
(Assignor) by these presents does assign and set over, without recourse, to 2005 RESIDENTIAL TRUST 3-2  425 Divisadero St, Ste 207,
San Francisco, TX 94117 (Assignee) the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by
ROLANDO MANLANGIT, AN UNMARRIED MAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) AS
NOMINEE FOR COUNTRYWIDE MORTGAGE VENTURES, LLC DBA FIRST FREEDOM MORTGAGE ITS SUCCESSORS AND
ASSIGNS.   Said mortgage Dated: 8/25/2005 is recorded in the State of IL, County of Cook on 9/16/2005, Document # 0525832119
AMOUNT: $ 19,050.00   SEE ATTACHED EXHIBIT A
Parcel # ███████1008  Property Address: █████
IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed as a sealed instrument by its proper signatory.
Executed on: August 31, 2017
2005 RESIDENTIAL TRUST 3-1
by CTF Asset Management LLC its Administrator

By:



Connie M. Riggsby, Vice President

State of Texas, County of Tarrant
On 08/31/2017, before me, the undersigned, Connie M. Riggsby, who acknowledged that he/she is Vice President of/ by CTF Asset
Management LLC its Administrator for 2005 RESIDENTIAL TRUST 3-1  and that he/she executed the foregoing instrument and that such
execution was done as the free act and deed of 2005 RESIDENTIAL TRUST 3-1  by CTF Asset Management LLC  its Administrator.



JANELL JUNKIN
Notary Public, State of Texas
My Commission Expires
August 19, 2019

Notary public, Janell Junkin
My Commission Expires: August 19, 2019

IL  Cook                                                              RTIRBC2/AOM/SFR/BK

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

# Exhibit A

PARCEL 1: UNIT 108 IN COUNTRY ACRES CONDOMINIUM AS
DELINEATED ON  A SURVEY OF THE FOLLOWING TRACT OF LAND:
THAT PART OF THE WEST  1/2 OF THE NORTHWEST 1/4 (EXCEPT THE
SOUTH 34 ACRES THEREOF) OF  SECTION 24, TOWNSHIP 41 NORTH,
RANGE 11, EAST OF THE THIRD  PRINCIPAL MERIDIAN, IN COOK
COUNTY, ILLINOIS, WHICH PLAT OF SURVEY IS ATTACHED AS
EXHIBIT "A" TO THE DECLARATION OF CONDOMINIUM  RECORDED AS
DOCUMENT 21980599, AS AMENDED FROM TIME TO TIME,  TOGETHER
WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON
ELEMENTS.

PARCEL 2: EASEMENT FOR INGRESS AND EGRESS FOR THE BENEFIT
OF  PARCEL 1 RECORDED AS DOCUMENT NUMBER 22143822

P.I.N. (S)  ███████████1008

RTIRBC2/AOM/SFR/BK

Cook County,  IL

# EXHIBIT F

Doc#. 1805846264 Fee: $50.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 02/27/2018 01:44 PM Pg: 1 of 2

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

**PREPARED BY & RETURN TO:**
C. R. Hall
2860 Exchange Blvd. # 100
Southlake, TX 76092                     **Assignment of Mortgage**               Send Any Notices To Assignee.
For Valuable Consideration, the undersigned, 2005 RESIDENTIAL TRUST 3-2 425 Divissadero St Ste. 207, San Francisco, CA 94117
(Assignor) by these presents does assign and set over, without recourse, to ✱✱✱
_____, (Assignee) the described mortgage with all interest, all liens,
any rights due or to become due thereon, executed by ROLANDO MANLANGIT, AN UNMARRIED MAN to MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., (MERS) AS NOMINEE FOR COUNTRYWIDE MORTGAGE VENTURES, LLC DBA FIRST
FREEDOM MORTGAGE ITS SUCCESSORS AND ASSIGNS..  Said mortgage Dated: 8/25/2005 is recorded in the State of IL, County of
Cook on 9/15/2005, Document # 0525832119 AMOUNT: $ 19,050.00  SEE ATTACHED EXHIBIT A
Parcel # ▊▊▊▊▊▊1008  Property Address: ▊
IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed as a sealed instrument by its proper signatory.
Executed on:  August 15, 2017
2005 RESIDENTIAL TRUST 3-2
By Park Tree Investments LLC, its Administrator

By: ▊▊▊▊▊▊▊▊▊▊▊▊                                          ▊▊▊▊▊▊▊▊▊▊▊▊
_____
Connie M. Riggsby, Vice President

State of Texas, County of Tarrant
On 08/15/2017, before me, the undersigned, Connie M. Riggsby, who acknowledged that he/she is Vice President of/ By Park Tree Investments
LLC, its Administrator for 2005 RESIDENTIAL TRUST 3-2  and that he/she executed the foregoing instrument and that such execution was
done as the free act and deed of 2005 RESIDENTIAL TRUST 3-2  By Park Tree Investments LLC, its Administrator.

```
JANELL JUNKIN
Notary Public, State of Texas
My Commission Expires
August 19, 2019
```

✱✱✱      Partners for Payment Relief DE IV, LLC
          920 Cassatt Road, Suite 210, Berwyn, PA 19312

Notary public, Janell Junkin
My Commission Expires: August 19, 2019

IL  Cook                                                    RTIRBC2/AOM/FBC

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

# Exhibit A

PARCEL 1: UNIT 108 IN COUNTRY ACRES CONDOMINIUM AS
DELINEATED ON A SURVEY OF THE FOLLOWING TRACT OF LAND:
THAT PART OF THE WEST 1/2 OF THE NORTHWEST 1/4 (EXCEPT THE
SOUTH 34 ACRES THEREOF) OF SECTION 24, TOWNSHIP 41 NORTH,
RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK
COUNTY, ILLINOIS, WHICH PLAT OF SURVEY IS ATTACHED AS
EXHIBIT "A" TO THE DECLARATION OF CONDOMINIUM RECORDED AS
DOCUMENT 21980599, AS AMENDED FROM TIME TO TIME, TOGETHER
WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON
ELEMENTS.

PARCEL 2: EASEMENT FOR INGRESS AND EGRESS FOR THE BENEFIT
OF PARCEL 1 RECORDED AS DOCUMENT NUMBER 22143822

P.I.N. (S) ███████████1.008

RTIRBC2/AOM/FBC

████████        Cook County, IL

# EXHIBIT G

Doc#. 1832033068 Fee: $52.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 11/16/2018 09:25 AM Pg: 1 of 3

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

## CORRECTIVE ASSIGNMENT OF MORTGAGE

**This Corrective Assignment of Mortgage is to correct an error in the execution date of the Assignment of Mortgage recorded on 02/27/2018 as Document 1805846264. The Assignor prematurely executed the Assignment before the date of the prior Assignment. This corrective assignment reflects the proper date.**

For Valuable Consideration, the undersigned, **2005 RESIDENTIAL TRUST 3-2, 425 Divisadero St Ste 207, San Francisco, CA 94117** (assignor) by these presents does assign and set over, without recourse, to **PARTNERS FOR PAYMENT RELIEF DE IV, LLC,** 920 Cassatt Road, Ste 210, Berwyn, PA 19312 (Assignee) the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **ROLANDO MANLANGIT, AN UNMARRIED MAN** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') AS NOMINEE FOR COUNTRYWIDE MORTGAGE VENTURES, LLC DBA FIRST FREEDOM MORTGAGE ITS SUCCESSORS AND ASSIGNS. Said mortgage **Dated: 08/25/2005** is recorded in the **State of IL, County of Cook** on 09/15/2005, Document **#0525832119. AMOUNT: $19,050.00.** PARCEL 1: UNIT 108 IN COUNTRY ACRES CONDOMINIUM AS DELINEATED ON A SURVEY OF THE FOLLOWING TRACT OF LAND: THAT PART OF THE WEST 1/2 OF THE NORTHWEST 1/4 (EXCEPT THE SOUTH 34 ACRES THEREOF) OF SECTION 24, TOWNSHIP 41 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, WHICH PLAT OF SURVEY IS ATTACHED AS EXHIBIT "A" TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT 21980599, AS AMENDED FROM TIME TO TIME, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS. PARCEL 2: EASEMENT FOR INGRESS AND EGRESS FOR THE BENEFIT OF PARCEL 1 RECORDED AS DOCUMENT NUMBER 22143822. PARCEL # ████ 1008. Property Address: ████████████

IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed as a sealed instrument by its proper signatory.

Executed On: **11/15/18**

2005 RESIDENTIAL TRUST 3-2 by Park Tree Investments LLC, its Administrator

By: ██████████████████
Dean Engle, Manager

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

State of Texas, County of Tarrant

On _____, before me personally appeared Dean Engle, who acknowledged that he is the Manager of Park Tree Investments LLC, the Administrator of 2005 RESIDENTIAL TRUST 3-2 and that he executed the foregoing instrument and that such execution was done as the free act and deed of 2005 RESIDENTIAL TRUST 3-2.

Witness my hand and official seal.

SEE
ATTACHED
_____
Notary Public

**Prepared by and, when recorded, return to: Barham Legal LLC, 2644 Kull Road, Lancaster, Ohio 43130**

FILED DATE: 12/7/2018 10:19 AM   2018CH15226

## ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ San Francisco _____ )

On _November 15, 2018_ before me, __Heather Hawker, Notary Public__

(insert name and title of the officer)

personally appeared ___Dean Engle___ - - - - - - - - - - - - - - - - - - - - - - - - - - - -
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

HEATHER HAWKER
COMMISSION # 2132502
NOTARY PUBLIC - CALIFORNIA
SAN FRANCISCO COUNTY
COMM. EXPIRES NOV. 2, 2019

Signature _____ (Seal)

# APPENDIX B

# **EXHIBIT A**



FILED DATE: 12/7/2018 10:19 AM 2018CH15228

After Recording Return To:

MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

Prepared By:
TRACY PANCYRZ
Countrywide Mortgage
Ventures, LLC dba First
Freedom Mortgage
380 S. 8th Street
Dundee, IL 60118



Doc#: 0525832119 Fee: $46.50
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 09/15/2005 01:04 PM Pg: 1 of 12

---

[Space Above This Line For Recording Data]

---

BT# ▉▉▉▉▉▉▉ (A)

Doc # 3 of 3

[Escrow/Closing #] ▉▉▉▉▉

[Doc ID #] ▉▉▉▉▉▉

**MORTGAGE**
(Line of Credit)

MIN ▉▉▉▉▉▉

THIS MORTGAGE, dated AUGUST 25, 2005 , is between
ROLANDO MANLANGIT, AN UNMARRIED MAN

residing at
▉▉▉▉▉▉▉▉▉▉,
the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we," "our," or "us" and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware corporation, with
an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS acting solely as nominee for
Countrywide Mortgage Ventures, LLC dba First Freedom Mortgage
("Lender" or "you") and its successors and assigns. MERS is the "Mortgagee" under this Mortgage.

● MERS HELOC - IL Mortgage
1D999-IL (11/04)(d)                        Page 1 of 7                        Initials:





DOC ID #: ▓▓▓▓▓▓▓▓

MORTGAGED PREMISES: In consideration of the loan hereinafter described, we hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the premises located at:

Street, Municipality

COOK                      Illinois 60016-5632 (the "Premises").
County                    ZIP

and further described as:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID #: ▓▓▓▓▓▓▓1008

The Premises includes all buildings, fixtures and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto,

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

LOAN: This Mortgage will secure your loan to us in the principal amount of $ 19,050.00          or so much thereof as may be advanced and readvanced from time to time to
ROLANDO MANLANGIT

the Borrower(s) under the Home Equity Credit Line Agreement and Disclosure Statement (the "Note") dated AUGUST 25, 2005          plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

DOC ID #: _____

**OWNERSHIP:** We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

**OUR IMPORTANT OBLIGATIONS:**

(a) **TAXES:** We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) **MAINTENANCE:** We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) **INSURANCE:** We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you recieve payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) **CONDEMNATION:** We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Mortgage.

(e) **SECURITY INTEREST:** We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

(f) **OUR AUTHORITY TO YOU:** If we fail to perform our obligations under this Mortgage, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Mortgage secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Mortgages.

● MERS HELOC - IL Mortgage
1D999-IL (11/04)

Page 3 of 7

Initials: ___

DOC ID #: ███████

**(g) PRIOR MORTGAGE:** If the provisions of this paragraph are completed, this Mortgage is subject and subordinate to a prior mortgage dated                                    and given by us to

as mortgagee, in the original amount of $ 0.00                     (the "Prior Mortgage"). We shall not increase, amend or modify the Prior Mortgage without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Mortgage promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Mortgage as and when required under the Prior Mortgage.

**(h) HAZARDOUS SUBSTANCES:** We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The first sentence of this paragraph shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

**(i) SALE OF PREMISES:** We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

**(j) INSPECTION:** We will permit you to inspect the Premises at any reasonable time.

**NO LOSS OF RIGHTS:** The Note and this Mortgage may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Mortgage without losing your rights in the Premises.

**DEFAULT:** Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, you may foreclose upon this Mortgage. This means that you may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Mortgage. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. In addition, you may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure. In addition, you shall be entitled to collect all reasonable fees and costs actually incurred by you in proceeding to foreclosure, including, but not limited to, reasonable attorneys' fees and costs of documentary evidence, abstracts and title reports.

**ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER:** As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.



FILED DATE: 12/7/2018 10:19 AM   2018CH15228

DOC ID #: [redacted]

**WAIVERS:** To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

**BINDING EFFECT:** Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Mortgage, and provided any obligation to make further advances under the Note has terminated, this Mortgage and your rights in the Premises shall end.

**NOTICE:** Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at.
For MERS:
P.O. Box 2026, Flint, MI 48501-2026
For Lender:
26050 Mureau Road, Ste 101, Calabasas, CA 91302
or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

**RELEASE:** Upon payment of all sums secured by this Mortgage and provided your obligation to make further advances under the Note has terminated, you shall discharge this Mortgage without charge to us and shall pay any fees for recording of a satisfaction of this Mortgage.

**GENERAL:** You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

**SECURITY AGREEMENT AND FIXTURE FILING:** This Mortgage constitutes a security agreement with respect to all fixtures and other personal property in which you are granted a security interest hereunder, and you shall have all of the rights and remedies of a secured party under the Uniform Commercial Code as enacted in the state where the property is situated (the "Uniform Commercial Code"). The recording of this Mortgage in the real estate records of the county where the property is located shall also operate from the time of recording as a fixture filing in accordance with the Uniform Commercial Code.



FILED DATE: 12/7/2018 10:19 AM   2018CH15228

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

DOC ID #: ███████████

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

Sealed and delivered in the presence of:

WITNESS:

_____

_____

_____

_____

██████████████

_____ (SEAL)
Mortgagor: ROLANDO MANLANGIT

_____ (SEAL)
Mortgagor:

_____ (SEAL)
Mortgagor:

_____ (SEAL)
Mortgagor:

DOC ID #: ▉▉▉▉▉▉▉

**STATE OF ILLINOIS,**                    County ss:

I, _the undersigned_ , a Notary Public in and for said county and state do hereby certify that
_Rolando Manlangit, an unmarried man_
; personally known to me to be the same person(s) whose name(s)
subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he
signed and delivered the said instrument as free and voluntary act, for the uses and purposes
therein set forth.
Given under my hand and official seal, this _25th_ day of _August, 2003_

My Commission Expires: _10/21/07_

This Instrument was prepared by:

▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Notary Public

"OFFICIAL SEAL"
Jolanta U. Koziol
Notary Public, State of Illinois
My Commission Exp. 10/21/2007

● MERS .HELOC - IL Mortgage          Page 7 of 7                    Initials: ▉▉
1D999-IL (11/04)

FILED DATE: 12/7/2018 10:19 AM  2018CH15228

**EXHIBIT**
**LEGAL DESCRIPTION**

PARCEL 1: UNIT 108 IN COUNTRY ACRES CONDOMINIUM AS DELINEATED ON A
SURVEY OF THE FOLLOWING TRACT OF LAND: THAT PART OF THE WEST ½ OF THE
NORTH WEST ¼ (EXCEPT THE SOUTH 34 ACRES THEREOF) OF SECTION 24,
TOWNSHIP 41 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK
COUNTY, ILLINOIS; WHICH PLAT OF SURVEY IS ATTACHED AS EXHIBIT "A" TO THE
DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT 21980599, AS AMENDED
FROM TIME TO TIME, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN
THE COMMON ELEMENTS.

PARCEL 2: EASEMENT FOR INGRESS AND EGRESS FOR THE BENEFIT OF PARCEL 1
RECORDED AS DOCUMENT NUMBER 22143822

P.I.N. (S)                    ████████1008

FILED DATE: 12/7/2018 10:19 AM   2018CH15226

FILED DATE: 12/7/2018 10:19 AM 2018CH15228

# CONDOMINIUM RIDER

**Return To:**

MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:
████████████1008

**Prepared By:**
TRACY PANCYRZ
Countrywide Mortgage
Ventures, LLC dba First
Freedom Mortgage
380 S. 8th Street
Dundee
IL 60118

████████ [Escrow/Closing #]     ████████ [Doc ID #]

**MULTISTATE CONDOMINIUM RIDER - Single Family/Second Mortgage**
Page 1 of 4



Initials: ████

3/99

-208R (0411)     CHL (11/04)(d)
VMP Mortgage Solutions, Inc. (800)521-7291

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

DOC ID #: ▮▮▮▮▮▮

THIS CONDOMINIUM RIDER is made this TWENTY-FIFTH day of AUGUST, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

Countrywide Mortgage Ventures, LLC dba First Freedom Mortgage

(the "Lender") of the same date and covering the property described in the Security Instrument and located at

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

COUNTRY ACRES

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the"Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

FILED DATE: 12/7/2018 10:19 AM  2018CH15228

DOC ID #:  ████████████

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

DOC ID #: ▮▮▮▮▮▮▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

▮▮▮▮▮▮▮ _____ (Seal)
ROLANDO MANLANGIT                                  - Borrower

_____ (Seal)
                                                   - Borrower

_____ (Seal)
                                                   - Borrower

_____ (Seal)
                                                   - Borrower

VMP®-208R (0411)        CHL (11/04)        Page 4 of 4                              3/99

# <u>APPENDIX C</u>

PO BOX 27370
Anaheim, CA 92809-0112

IMPORTANT INFORMATION
ENCLOSED



(11) 969 0024 8779 2665 6

**Mailed On:** 2/21/2019          **Order Number:** 1648176-01

ROLANDO MANLANGIT



# FCI Lender Services, Inc.

Customer Service: (800) 931-2424    Fax: 714-282-5775
Customer Information: www.trustfci.com NMLS #4920, BRE #01022780

Report Date:2/21/2019

## Monthly Statement

### Summary - Repayment Period

| | | | |
|---|---|---|---|
| Pmt Due Date | 02/25/2019 | Late Charge Due After | 3/7/2019 |
| Annual Rate | 8.000% | Late Charge Due | $0.00 |
| Credit Limit | $19,050.00 | Finance Charges | $183.09 |
| Unpd.Charges | $0.00 | Paid To Date | 08/25/2013 |
| Maturity Date | 08/25/2030 | Next Due Date | 09/25/2013 |

| | |
|---|---|
| Account # | 6794 |
| Past Due Amt | $12,917.76 |
| Curr.Pmt.Amt | $300.45 |
| Trust/Esc.Pmt | $0.00 |
| Other Payments | $0.00 |
| Deferred Charges | $0.00 |
| Min.Pmt.Due | $13,218.21 |

ROLANDO MANLANGIT

### Account Activity

| Date | Reference | Description | Reserve | Impound | Charges | Credits | Balance |
|---|---|---|---|---|---|---|---|
| 01/21/2019 | | Balance Forward | $0.00 | $0.00 | $0.00 | $0.00 | $26,946.58 |
| 02/20/2019 | | Finance Charges | $0.00 | $0.00 | $183.09 | $0.00 | $27,129.67 |
| | | | $0.00 | $0.00 | $183.09 | $0.00 | |

### Interest Charge Summary

| Balance Date | Daily Balance | Days | Daily Periodic Rate | Anual Percentage Rate | Finance Charges |
|---|---|---|---|---|---|
| 01/21/2019 | $26,946.58 | 31 | 0.021918% | 8.000% | $183.09 |
| | | 31 | | | $183.09 |

---PLEASE DETACH THE BOTTOM PORTION OF THIS STATEMENT, RETURN IT WITH YOUR PAYMENT AND RETAIN THE TOP PORTION FOR YOUR RECORDS---

 FCI Payment Coupon
Please do not Staple or Paperclip

 Pay your bill online ($15.00 fee)
https://lirs.trustfci.com/borrower

 Pay by Phone ($18.00 fee)
800-931-2424

**FCI Lender Services, Inc.**

PO BOX 27370
Anaheim, CA 92809-0112
800-931-2424



### Summary - Repayment Period

| | | | |
|---|---|---|---|
| Past Due Amt | $12,917.76 | Account # | 6794 |
| Curr.Pmt.Amt | $300.45 | Pmt Due Date | 2/25/2019 |
| Trust/Esc.Pmt | $0.00 | Annual Rate | 8.00% |
| Other Payments | $0.00 | Unpd.Charges | $0.00 |
| Deferred Charges | $0.00 | Credit Limit | $19,050.00 |
| Min.Pmt.Due | $13,218.21 | Full Address : | |
| Late Charge Due After | 3/7/2019 | | |
| Late Charge Due | $0.00 | | |

   

**CUSTOMER SERVICE**
Our Customer Care Department is here to help if you have any questions. Please call us toll-free during regular business hours (Mon-Fri, 8:00 am - 5:00 pm PST) at 1-800-931-2424, x651.

**ERROR RESOLUTION AND REQUEST FOR INFORMATION**
If you believe that there is an error in your account or if you need FCI to provide you with any documentation or information regarding your mortgage loan account, please write to FCI at the following address: FCI Lender Services, Inc. - Attn: Consumer Requests, P.O. Box 27370, Anaheim, CA 92809-0112; or fax to FCI at 1-714-282-5775. You will need to provide us the name of the Borrower(s), the mortgage loan account number and either describe the error that you believe has occurred or the request for specific information or documentation. We do not accept any requests for either Error Resolution or for documentation and/information over the telephone although you can call us if you have any questions about the Error Resolution and/or Request for Information process.

**CONFORMING PAYMENTS - PAYOR REQUIREMENTS**
The payment coupon must be included with remittance. Payments are to be received in accordance with the periodic payment statement and must include your account number clearly illustrated on the payment instrument. All payments must be received by FCI during normal business hours (Mon-Fri, 8:00 am to 5:00 pm PST) in order to be credited to Payer's account the same day of receipt. All payments must be payable in U.S. Dollars only and mailed directly to FCI's payment processing P.O. Box set forth in FCI's Periodic Statement and payment coupon. **PARTIAL PAYMENTS** are held in suspense accounts until a full payment is received. At that point, the full payment will be applied to the principal and interest of the first monthly payment to become delinquent or as otherwise referenced in your Note and Security Instrument.

**SERVICEMEMBERS CIVIL RELIEF ACT**
The Service members Civil Relief Act may offer protection or relief to members of the military who have been called to active duty. If either you have been called to active duty or you are the spouse or dependent of a person who has been called to active duty, and you have not yet made us aware of your status, please contact our Customer Care Department during normal business hours (Mon-Fri, 8:00 am to 5:00 pm PST) at 1-800-931-2424, x651.

**MORTGAGE COUNSELING**
For help exploring your options, the Federal government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/mortgagehelp or the Department of Housing and Urban Development at : http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm , or by calling HUD at 1-800-569-4287.

**NEW YORK CONSUMERS ONLY**
FCI is registered with the Superintendent of the New York State Department of Financial Services (NMLS #4920). Our goal is to provide professional and courteous service to our customers. We welcome your comments and feedback regarding our services. If you have a complaint regarding our services, we ask you to contact us to discuss your concerns. If the need arises, you may file complaints about FCI with the New York State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-877-BANK-NYS or by visiting the Department's website at www.dfs.ny.gov.

**IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT.IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

--------Please detach the bottom portion of this Statement, return it with your payment, and retain the top portion for your records ----------

**CHANGE OF ADDRESS** *(If correct on front, please do not use)* For change of address over the phone, call our Customer Care Department at 1-800-931-2424, x651. Please Print Clearly in blue or black ink only in the boxes below:

Street Address _____
City_____ State_____ ZipCode _____
Area Code and Home Phone_____ Area Code and Work Phone_____
Email_____

**Property Use?**          **Market Value of Property?**          **Email Payment Statements?**
___Primary Residence                                        ____Yes, I'd like to receive email statements.
___Rental                      $_____          ____ No, please don't send me email statements.
___Commercial

# <u>APPENDIX D</u>

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
2/6/2019 11:36 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15228

FILED DATE: 2/6/2019 11:36 AM   2018CH15228

| | |
|---|---|
| 2120 – Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| ☐ Summons   ☑ Alias Summons | (07/25/18) CCCH 0100 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - CHANCERY DIVISION

PARTNERS FOR PAYMENT RELIEF DE
IV, LLC

v.

ROLANDO MANLANGIT, 640 MURRAY
LN #108, DES PLAINES, IL 60016

No: 2018CH15228

Case Management Date: 4/8/19

Time: 10:00 ⦿ AM ◯ PM

Courtroom: 2801

### MORTGAGE FORECLOSURE SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an appearance, pay the required fee (unless the
Court determines you cannot afford to pay this fee), and answer or otherwise plead in response to
the attached Complaint within 30 days. A copy of the Complaint is attached to this Summons. To
file your appearance and pleadings you need access to the internet and a credit card for payment.
Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are
available at all Clerk's Office locations. Please refer to the last page of this document for location
information.

> **YOU MAY STILL BE ABLE TO SAVE YOUR HOME.**
> **DO NOT IGNORE THIS DOCUMENT.**
> **GO TO PAGE 2 OF THIS SUMMONS FOR INFORMATION ON FREE HELP FROM THE COURT.**

You must file within 30 days after service of this summons, not counting the day of service.

If you fail to do so, a judgment by default may be entered against you for the relief requested in the
complaint.

To the Officer:

This summons must be returned by the officer or other person to whom it was given for service,
with endorsement of service and fees, if any, immediately after service. If service cannot be made,
this summons shall be returned so endorsed. This summons may not be served later than 30 days
after its date.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 6

**Mortgage Foreclosure Summons**        **(07/25/18) CCCH 0100 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile. illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: Firm: 61973

Atty Name: Jotie K. Johnson

Atty. for: Plaintiff

Address: 123 S Broad St Ste 305

City: Lancaster

State: OH   Zip: 43130

Telephone: 740-689-9828

Primary Email: lawyers@b-m.law

Witness,

2/6/2019 11:36 AM DOROTHY BROWN

Clerk of the Court

Date of Service:
(To be inserted by officer on copy left with defendant or other person)

Mortgage Foreclosure Summons                    (07/25/18) CCCH 0100 C

## IMPORTANT INFORMATION FOR HOMEOWNERS IN FORECLOSURE
## HOW TO SAVE YOUR PROPERTY - PLEASE READ - DO NOT IGNORE

1. POSSESSION: The lawful occupants of a home have the right to live in the home until a judge enters an order for possession. In most cases, if you continue to live in your home, you will have at least nine (9) months before you have to move.

2. OWNERSHIP: You continue to own your home until the court rules otherwise.

---

3. WORKOUT OPTIONS: The mortgage company does not want to foreclose on your home if there is any way to avoid it. Call your mortgage company:

   PARTNERS FOR PAYMENT RELIEF DE IV, LLC

   (Homeowner's current mortgage service)

   or its attorneys to find out the alternatives to foreclosure. To get help filing an Appearance and Answer, contact the Chancery Division Advice Desk, Room CL-16 of the Richard J. Daley Center, 50 W. Washington St., Chicago, IL 60602, Monday through Friday, 8:30 am to 3:00 pm. THESE SERVICES ARE FREE.

---

4. LAWYER: If you do not have a lawyer, you may contact CARPLS Legal Aid Hotline at (312) 738-9200 for legal advice or visit the Advice Desk (see above). You may also call Chicago Volunteer Legal Services at (312) 332-1624 or the Legal Assistance Foundation of Metropolitan Chicago at (312) 341-1070.

5. REINSTATEMENT: As the homeowner you have the right to bring the mortgage current (that means paying all late payments, penalties, fees and costs) within 90 days after you receive the summons.

6. REDEMPTION: As the homeowner you have the right to sell your home, refinance, or pay off the loan during the redemption period, which is at least seven (7) months after you receive the summons.

7. PAYOFF AMOUNT: You have the right to obtain a written statement of the amount necessary to pay off your loan. Your mortgage company (identified in #3 above) must provide you this statement within 10 business days of receiving your request, provided that your request is in writing and includes your name, the address of the property, and the mortgage account or loan number. Your first payoff statement will be free.

8. SURPLUS: As the homeowner you have the right to petition the court for any excess money (i.e., if your home is sold for more than you owe) that results from a foreclosure sale of your home. In many cases you do not need a lawyer to do this. The Chancery Division Advice Desk, Room CL-16 of the Richard J. Daley Center, will assist you in preparing all the necessary papers at no charge. The Advice Desk is open Monday through Friday, 8:30 am to 3:00 pm.

9. GET ADVICE: This information does not replace the advice of a professional. You may have other options. Get professional advice from a lawyer or HUD-certified housing counselor about your rights and options to avoid foreclosure.

---

10. PROCEED WITH CAUTION: YOU MAY BE CONTACTED BY PEOPLE OFFERING TO HELP YOU AVOID FORECLOSURE. BEFORE ENTERING INTO ANY TRANSACTION WITH PEOPLE OFFERING TO HELP YOU, PLEASE CONTACT A LAWYER, GOVERNMENT OFFICIAL, OR HUD-CERTIFIED HOUSING COUNSELOR FOR ADVICE.

---

*(left margin)* FILED DATE: 2/6/2019 11:36 AM  2018CH15228

Mortgage Foreclosure Summons                    (07/25/18) CCCH 0100 D

## INFORMACION IMPORTANTE PARA PROPIETARIOS DE CASA EN PROCESO DE EJECUCION HIPOTECARIA:
## COMO SALVAR SU CASA – POR FAVOR LEA ESTO – NO LO IGNORE -USTED HA RECIBO UN DOCUMENTO LEGAL PORQUE HA SIDO DEMANDADO POR SU BANCO HIPOTECARIO

1.  POSESION: Los ocupantes legítimos de la vivienda tienen el derecho de vivir en la casa hasta que el juez emita, por escrito, una Orden de Posesión judicial. En la mayoría de los casos, si continúa viviendo en su casa, tendrá por lo menos nueve (9) meses antes que tenga que mudarse.

2.  TITULARIDAD: Usted sigue siendo propietario de su casa hasta que el juez emita una decisión contraria.

3.  OPCIONES DE NEGOCIACION: El prestamista hipotecario no quiere ejecutar sobre su casa si hay alguna manera de evitarlo. Llame a su prestamista hipotecario:

    PARTNERS FOR PAYMENT RELIEF DE IV, LLC

    (Subraye el nombre del actual prestamista hipotecaria)

    o a sus abogados para averiguar las alternativas a la ejecución hipotecaria. Para obtener ayuda en archivar su Comparecencia en Juicio o Contestación a la Demanda, acuda a la Mesa de Consejo de la División de Chancery, Cuarto CL-16 del Centro Daley, 50 W. Washington St., Chicago, IL 60602, Lunes a Viernes de 8:30 am a 3:00 pm. ESTOS SERVICIOS SON GRATUITOS.

4.  ABOGADO: Si no tiene un abogado, puede llamar a la línea gratuita de CARPLS al (312) 738-9200 para asesoría legal y referencias o visite la Mesa de Consejo (véase arriba). O también puede comunicarse con el "Chicago Volunteer Legal Services" al (312) 332-1624 o con el "Legal Assistance Foundation of Metropolitan Chicago" al (312) 341-1070.

5.  RESTABLECIMIENTO: Como el propietario usted tiene el derecho de poner al corriente su hipoteca (pagando los pagos retrasados, penalidades, honorarios y costos) dentro de 90 días después de que usted reciba este Emplazamiento.

6.  REDENCION DE LA PROPIEDAD: Como el propietario usted tiene el derecho de vender su casa, refinanciar, o pagar el total del préstamo durante el período de redención, que es por lo menos siete (7) meses después que reciba este Emplazamiento.

7.  CANTIDAD DEL SALDO: Tiene el derecho de obtener una declaración por escrito de la cantidad necesaria para pagar su préstamo. Su prestamista hipotecario (identificado en el #3 arriba) debe proporcionarle esta declaración dentro de 10 días laborales posteriores a haber recibido su petición, con tal de que su petición sea por escrito e incluya su nombre, dirección de la propiedad y cuenta hipotecaria o número de préstamo. Su primera declaración del saldo será gratis.

8.  EXCESO DE BIENES: Como el propietario usted tiene el derecho de solicitarle al tribunal el exceso de dinero (si su casa se vende por mas de lo que debe) que resulte de la venta de ejecución de su casa. En la mayoría de los casos no necesita un abogado para hacerlo. La Mesa de Consejo de la División de Chancery, Cuarto CL-16 del Centro Richard J. Daley, le ayudara a preparar todos los documentos necesarios gratis. El horario de la Mesa de Consejo es de Lunes a Viernes de 8:30 am a 3:00 pm.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

FILED DATE: 2/6/2019 11:36 AM   2018CH15228

FILED DATE: 2/6/2019 11:36 AM  2018CH15228

9. OBTENGA ASESORIA: Esta información no reemplaza asesoría legal de un profesional. Podría tener otras opciones. Obtenga asesoría profesional de un abogado o de un consejero de vivienda certificado por HUD sobre sus derechos y opciones para evitar la ejecución hipotecaria.

---

10. PROCEDA CON PRECAUCION: USTED PODRA SER CONTACTADO POR GENTE OFRECIENDOLE AYUDA PARA EVITAR LA EJECUCION HIPOTECARIA. ANTES DE REALIZAR CUALQUIER TRAMITE CON PERSONAS OFRECIENDOLE AYUDA, POR FAVOR COMUNIQUESE CON UN ABOGADO, REPRESENTANTE GUBERNAMENTAL O CONSEJERO DE VIVIENDA CERTIFICADO POR HUD PARA ASESORIA.

---

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 2/6/2019 11:36 AM   2018CH15228

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

**Daley Center Divisions/Departments**

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

◉ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

FILED
12/7/2018 10:19 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH15228

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
CHANCERY DIVISION**

| | | |
|---|---|---|
| Partners for Payment Relief DE IV, LLC | ) | No: **2018CH15228** |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Rolando Manlangit; Unknown Owners | ) | Address: ▮▮▮▮▮▮▮▮▮▮ |
| and Nonrecord Claimants | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT TO FORECLOSE MORTGAGE

NOW COMES the Plaintiff, Partners for Payment Relief DE IV, LLC, by and through its attorney, Jorie K. Johnson, Of Counsel, Barham Legal LLC, complaining of the Defendants herein pursuant to 735 ILCS 5/15-1101, state as follows:

1. Plaintiff files this Complaint to Foreclose the Mortgage, trust, deed or other conveyance in the nature of a mortgage (hereinafter called "Mortgage") hereinafter described, and names the persons identified in the above caption as "Defendants," as parties hereto.

2. Pursuant to 735 ILCS 5/15-1504(c)(9), any and all notices of default or election to declare the indebtedness due and payable or other notices required to be given have been duly and properly given, sent by regular and certified mail on March 2, 2018.

3. Attached as Exhibit A is a true copy of the Mortgage. Attached as Exhibit B is a true copy of the Note secured thereby.

4. Information concerning said Mortgage attached as Exhibit "A":

    (A) Nature of the instrument: Mortgage.

    (B) Date of the Mortgage: 08/25/2005.

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

(C)  Name of mortgagor(s): Rolando Manlangit

(D)  Name of the Original mortgagee:  Mortgage Electronic Registration Systems, Inc. solely as nominee for Countrywide Mortgage Ventures dba First Freedom Mortgage executed the mortgage.

(E)  Date and Place of Recording or Registering: 09/15/2005 at 1:04 pm at the Cook County Recorder of Deeds.

(F)  Identification of Recording: Document No: 0525832119

(G)  Interest subject to the mortgage: Fee Simple

(H)  Amount of original indebtedness: $19,050.00

(I)  Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty;

> (i)  Legal Description: Parcel 1: Unit 108 in Country Acres Condominium as delineated on a survey of the following tract of land: That part of the West 1/2 of the Northwest 1/4 (except the South 34 acres thereof) of Section 24, Township 41 North, Range 11 East of the Third Principal Meridian, in Cook County, Illinois, which plat of survey is attached as Exhibit A to the Declaration of Condominium recorded as Document 21980599, as amended for time to time, together with its undivided percentage interest in the common elements. Parcel 2: Easement for ingress and egress for the benefit of Parcel 1 recorded as Document Number 22143822.
>
> (ii)  Commonly Known As: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮

FILED DATE: 12/7/2018 10:19 AM  2018CH15228

   (iii)  Tax Parcel Number: ███████1008.

 (J) Statement as to defaults: Mortgagor has not paid the monthly installments of principal, taxes, interest, and insurance for 08/25/2013 through the present; the balance due on the Note and the Mortgage as of 11/20/2018 $26,595.50, inclusive of principal, interests, costs, advances and fees. Interest and fees accrue pursuant to the note.

 (K) Name of the present owner(s) of said premises: Rolando Manlangit

 (L) Names of other persons who are joined as defendants and whose interest in or lien on the mortgage real estate is sought to be terminated:

  i)  Rolando Manlangit as the owner of the real estate foreclosed herein;

  ii)  Rolando Manlangit as mortgagor of the real estate foreclosed herein;

  iii)  Unknown Owners and Nonrecord Claimants.

 (M) Names of persons personally liable for payment of the Note: Rolando Manlangit

 (N) Capacity in which Plaintiff brings this foreclosure: Plaintiff is the Mortgagee under 735 ILCS 5/15-1208. The Mortgage was assigned first from Mortgage Electronic Registration Systems, Inc. solely as nominee for Countrywide Mortgage Ventures dba First Freedom Mortgage to The Bank of New York Mellon fka The Bank of New York, as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee on Behalf of the Certificateholders of the CWHEQ Inc., CWHEQ Revolving Home Equity Loan Trust, Series 2005-I on 11/26/2013 in an assignment recorded on 12/02/2013 as document 1333608126, attached as Exhibit C. It was next transferred from The Bank of New York Mellon fka The Bank of New York, as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee on Behalf of the Certificateholders of the CWHEQ Inc., CWHEQ Revolving Home Equity Loan Trust, Series 2005-I to 2005 Residential Trust 3-1 on 08/03/2017 in an assignment recorded 01/04/2018 as document 1800408144, attached as Exhibit D. 2005 Residential Trust 3-1 then transferred its interest to 2005 Residential Trust 3-2 on

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

08/31/2017 in an assignment recorded 01/04/2018 as document 1800408145, attached as Exhibit E. 2005 Residential Trust 3-2 then transferred its interest to Partners for Payment Relief DE IV, LLC on 08/15/2017 in an assignment recorded 02/27/2018 as document 1805846264, attached as Exhibit F. 2005 Residential Trust 3-2 recorded a Corrective Assignment of Mortgage on 11/16/2018 as document 1832033068, attached as Exhibit G, correcting the date of the assignment to Partners for Payment Relief DE IV, LLC.

(O) Facts in support of a redemption period shorter than the longer of seven months from the date that mortgagor, or if more than one, all the mortgagors have been served with summons or by publication or have otherwise submitted to the jurisdiction of the court, or three months from the entry of the judgment of foreclosure, whichever is later, if sought: The redemption period shall be determined pursuant to 735 ILCS 5/15-1603.

(P) Statement that the right of redemption has been waived by all owners of redemption: There has been no executed waiver of redemption by all owners of redemption, however Plaintiff alleges that it is not precluded from accepting such a waiver of redemption by the filing of this complaint.

(Q) Facts in support of request for attorney's fees and of costs and expenses: The subject mortgage provides for payment of attorney's fees, court costs, and expenses in the event of a default by the mortgagors.

(R) Facts in support of a request for appointment of mortgagee in possession of or for appointment of a receiver, and identity of such receiver. Unless otherwise alleged, Plaintiff will pray for said relief after filing of the instant foreclosure action by separate petition if such relief is sought.

(S) Offer to the mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage

without judicial sale. No allegation of an offer is made. However, Plaintiff alleges that it is not precluded from making or accepting such offer by the filing of the instant foreclosure action.

(T) Plaintiff seeks to terminate the right to possess the mortgaged real estate after confirmation of a foreclosure sale against all defendants who have the right to possess the property.

5. Plaintiff avers that in addition to persons designated by name herein and the Unknown Defendants hereinbefore referred to, there may be other persons, and/or nonrecord claimants who may be interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, in this Complaint described, including but not limited to the following: UNKNOWN OWNERS and NONRECORD CLAIMANTS.

That the name of each such person is unknown to Plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made party defendants to this action by the name and description of Unknown Owners and Nonrecord Claimants.

REQUEST FOR RELIEF:

WHEREFORE, THE PLAINTIFF REQUESTS:

(i)     A judgment of foreclosure and sale;

(ii)    An order granting a shortened redemption period, if authorized by law;

(iii)   A judgment for attorney's fees, costs, and expenses;

(iv)    For the appointment of a selling officer;

(v)     Such other and further relief as the court deems just.

ADDITIONAL REQUEST FOR RELIEF:

Plaintiff also requests that the judgment for foreclosure or other orders entered herein provide for the following per 735 ICLS 5/15-1506(f).

1.  A sale by public auction.

Page 5 of 6

FILED DATE: 12/7/2018 10:19 AM   2018CH15228

2. A sale by open bid.

3. A Judge of this Court or Sheriff of the County shall conduct the sale.

4. Title in the real estate may be subject, at the sale, to exceptions including general real estate taxes for the current year and for the preceding year which have not become due and payable as of the date of entry of the Judgment of Foreclosure, any special assessments upon the real estate, and easements and restrictions of record.

5. In the event a party to the foreclosure is a successful bidder at the sale, such party shall be allowed to offset against the purchase price to be paid for such real estate amounts due such party under the Judgment of Foreclosure or Order confirming the sale.

Dated: December 6, 2018

Respectfully submitted,

*/s/ Jorie K. Johnson*
Jorie K. Johnson, Of Counsel
Attorney for Plaintiff
Barham Legal LLC
2644 Kull Road
Lancaster, Ohio 43130
Phone: 740-689-9828
Fax: 866-593-2635
lawyers@barhamlegal.com
Cook County Firm Number – 61973

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**