## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **ROLANDO MANLANGIT and PEOPLE OF THE STATE OF ILLINOIS EX REL. ROLANDO MANLANGIT,** | |
| Plaintiffs, | Case No. 19-cv-03265 |
| v. | Judge Mary M. Rowland |
| **FCI LENDER SERVICES, INC., ET AL.,** | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Rolando Manlangit and People of the State of Illinois ex rel. Rolando Manlangit bring suit against Defendants FCI Lender Services ("FCI"), Partners for Payment Relief, DE IV, LLC ("PPR"), attorney Jorie K. Johnson, attorney Daniel O. Barham, Barham Legal, LLC, and Barham & Maucere, LLC, (collectively "Barham") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, Illinois Collection Agency Act, 225 ILCS 425/1 *et seq.*, and the Illinois Consumer Fraud Act, 810 ILCS 505/2. Before the Court are Defendants' motions to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) [39 & 41]. For the following reasons, Defendants' motions are granted in part and denied in part.

## BACKGROUND

The following facts are alleged in Plaintiffs' First Amended Complaint ("FAC") and the accompanying documents and are presumed true for purposes of the present motions. On August 25, 2005, Manlangit executed a Home Equity Line of Credit Agreement and Disclosure Statement (the "HECLA") with Countrywide Mortgage Ventures LLC to finance the purchase of a condominium. (Dkt. 30 at Appendix A). The credit limit under the HECLA is $19,050. (*Id.* at ¶ 46). The HECLA designates an initial Draw Period of 60 months that is automatically renewed for an additional 60 months absent notice to Manlangit. (*Id.* at Appendix A, ¶ 1). During the Draw Period, Manlangit can request loans up to the credit limit, and he is only required to pay periodic minimum payments consisting of "all unpaid finance charges, credit life insurance premiums, and other charges imposed during the billing cycle together with any [a]mount [p]ast [d]ue." (*Id.* at Appendix A, ¶¶ 1; 4F). Making these minimum payments during the Draw Period does not result in a reduction of the principal. (*Id.*) Following the Draw Period is a Repayment Period of 180 months during which Manlangit is required to make periodic minimum payments consisting of "1/80th of the outstanding principal balance … as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any [a]mount [p]ast [d]ue." (*Id.* at Appendix A, ¶¶ 1; 4G). The creditor is required to send periodic statements during the Draw Period and Repayment Period indicating the minimum payment due during the given period. (*Id.* at Appendix A, ¶ 4B). The HECLA also contains an optional

acceleration clause permitting the creditor to "declare all sums owing under [the] [a]greement … immediately due and payable" for various reasons, including the failure to make a minimum payment under the agreement. (*Id.* at Appendix A, ¶¶ 13A(1); 13B(3)).

Manlangit also executed a Mortgage on August 25, 2005, securing his obligations under the HECLA. (*Id.* at Appendix B). The Mortgage provides that if Manlangit defaults on the HECLA, the holder of the Mortgage is entitled to foreclose. (*Id.*) Defendant PPR asserts that it is the current owner of the of the HECLA and Mortgage. (*Id.* at ¶ 41). PPR is in the business of acquiring defaulted mortgage loans at a discounted price and collecting on them. (*Id.* at ¶23).

Manlangit stopped making payments on the HECLA in 2013. (*Id.* at ¶¶ 40; 43). On February 6, 2019, PPR, represented by the Barham Defendants and Johnson,[1] filed a Complaint to Foreclose Mortgage against Manlangit. (*Id.* at ¶ 75; Appendix E). In the foreclosure complaint, PPR claimed that it attempted to notify Manlangit of its intent to accelerate amounts due under the HECLA on March 2, 2018. (*Id.* at Appendix E, 7). The foreclosure complaint did not, however, include a claim for deficiency judgment against Manlangit. (*Id.* at Appendix E).

On September 21, 2018, October 22, 2018, and February 21, 2019, Defendant FCI, the HECLA loan servicer since 2017, sent Manlangit statements requesting payment under the HECLA. (*Id.* at ¶¶ 44, 73, Appendix C, D, G). The letters state

---

[1] Defendant Johnson has been dismissed. (Dkt. 50).

that there is a $15.00 fee for paying the debt online and an $18.00 fee for paying by telephone but no charge for paying by mail. (*Id.* at ¶ 103).

On May 3, 2019, PPR voluntarily dismissed its foreclosure complaint against Manlangit. (*Id.* at ¶ 84) (Dkt. 41 at 2). Subsequently, Manlangit filed the present suit, alleging that by attempting to collect on the HECLA through the foreclosure complaint and the mailed statements, Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, Illinois Collection Agency Act, 225 ILCS 425/1 *et seq.*, and the Illinois Consumer Fraud Act, 810 ILCS 505/2.

## LEGAL STANDARDS

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955,

1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

## ANALYSIS

Count I of the FAC alleges that PPR and the Barham Defendants violated § 1692e the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* by filing a foreclosure action after the Illinois statute of limitations on the HECLA had expired and that the Barham Defendants violated the same provision by attempting to collect debt on behalf of an unlicensed buyer (PPR).  Count II alleges that FCI violated §§ 1692e and 1692f of the FDCPA by (1) attempting to collect debt under the HECLA after the Illinois statute of limitations had expired and (2) attempting to collect service fees in excess of the debt due under the HECLA. Counts III and IV allege that PPR violated the Illinois Consumer Fraud Act ("ICFA"), 810 ILCS 505/2 and Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/1 *et seq.* by filing a foreclosure action after the Illinois statute of limitations had expired and collecting debts from Illinois residents without a license.

The Court first considers the common question raised in Counts I through III based on the Illinois statute of limitations.

### A. Statute of Limitations

Attempting to collect on a time-barred debt is a violation of §§ 1692e and 1692f of the FDCPA which prohibit debt collectors from using unfair, "false, deceptive, or

misleading representations or means" in collecting a debt. *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2013); *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537, at *8 (N.D. Ill. Mar. 30, 2017) ("In this Circuit, filing a time-barred debt collection lawsuit, in and of itself, violates this prohibition because such a suit falsely implies that the debt collector has legal recourse to collect the debt."). The parties agree that the Illinois statute of limitations on a written contract is ten years and five years on an oral contract. 735 ILCS 5/13-205 & 206. Defendants argue that the HECLA is a written contract and governed by a ten-year statute of limitations.

When deciding the applicability of the five- or ten-year statute of limitations period, Illinois courts adhere to "a strict interpretation of the meaning of a written agreement for purposes of the statute of limitations." *Portfolio Acquisitions, L.L.C. v. Feltman*, 909 N.E.2d 876, 880 (Ill. App. Ct. 2009). "A contract will only be deemed written if parties are identified and all the essential terms are in writing and ascertainable from the instrument itself[—] [i]f resort to parol evidence is necessary to identify the parties or essential terms, the contract is considered an oral contract for purposes of the statute of limitations." *Id.* "The essential elements or terms of a promise to pay are: (1) the parties to the agreement, (2) the nature of the transaction, (3) the amount in question, and (4) at least a reasonable implication of an intention to repay the debt." *Kranzler v. Saltzman*, 942 N.E.2d 722, 726 (Ill. App. Ct. 2011).

Applying this strict interpretation to the HECLA, the Court concludes that the agreement is an oral contract subject to the five-year statute of limitations period.

Manlangit is correct that because the amount loaned to him is absent from the HECLA, parol evidence is necessary to establish the amount in question. Although Defendants argue that the credit limit of $19,050.00 is sufficient to establish the amount in question, courts considering the applicability of the statute of limitations to an agreement to lend money have asked whether the agreement specifies the actual amount owed, rather than the amount of credit available to the borrower. *See e.g.*, *Ramirez v. AP Account Servs., LLC*, No. 16-CV-2772, 2017 WL 25179, at *3 (N.D. Ill. Jan. 3, 2017) (Member Handbook governing checking account was oral contract subject to five-year statute of limitations in action regarding attempt to collect debts owed on checking account in part because "the amount of debt in question is not stated in the Handbook.").

In the present case, the HECLA has no fixed repayment schedule; the debtor receives periodic statements that indicate a balance, a 'minimum payment due' and a 'payment due date'; the interest rate is variable; the lender can suspend credit for a number of conditions; the debtor is issued a card, and the card contains the insignia of a bank. (Dkt. 30 at ¶¶ 51-52; 54-55; 57). These factors, particularly the need to reference a periodic statement to determine the amount due, is a persuasive argument that the HECLA is an "oral" contract as opposed to a "written" contract under Illinois law. *Cf., Eul v. Transworld Systems, et al.,* 2107 WL 1178537 * 10 (N.D.Ill. Mar. 30, 2017) (rejecting the notion that five-year statute of limitations applied to student loan agreement where "amount" of the loan and the "repayment terms" required reference to Disclosure Statement because Disclosure Statement was

7

"expressly incorporated into the" student loan).[2] In fact, faced with the same argument (that the HECLA is an oral agreement because it does not specify the amount owed) regarding a nearly identical HECLA with Countrywide, an Illinois court recently concluded that the agreement was an oral contract subject to the five-year statute of limitations period. *United Guarantee Residential v. Richardson*, 2018 M6 3965 (Jan. 28, 2019) (Dkt. 53 at Attachment A-C). The Court sees no reason to upset that determination and defers to the state court's conclusion.

With the five-year statute of limitations decided, the Court notes that the Defendants commenced the foreclosure action within one year of PPR's exercising their right to accelerate the debt on March 2, 2018. The Court therefore turns its attention to when the statute of limitations began to run.

Citing to the general proposition that a cause of action accrues at "the moment a creditor may legally demand payment," Manlangit argues that "acceleration is not necessary to start the running of the statute of limitations" and that a borrower's first default on a minimum payment is sufficient to start the statute of limitations on the entire outstanding debt. (Dkt. 53 at 14); *Beynon Bldg. Corp. v. Nat'l. Guardian Life Ins. Co.*, 455 N.E.2d 246, 251-52 (Ill. App. Ct. 1983). The Court agrees that while acceleration may not be necessary to start the statute of limitations, when the option

---

[2] Defendants argue that like the Disclosure Statement in *Eul*, the amount loaned is reflected in the periodic statements which are referenced in the HECLA. Assuming the periodic statements referenced in the HECLA are the monthly statements sent by FCI, that supports a finding that parol evidence is required to determine the amount due since, according to the allegations in the FAC, the amount reflected in the statements is subject to change. (Dkt. 30 at Appendix A Rider; Appendix C, D, and G) (noting borrower may dispute charges reflected in periodic statements). The Disclosure Statement in *Eul*, signed by the borrower and lender, contained the undisputed amount that did not change.

is exercised, it does in fact start the running of the statute of limitations for the outstanding debt on the date of acceleration.

Backing up a bit, when a debt instrument like the one here has a maturity date, under Illinois law the statute of limitations begins to run at the maturity date, not at the time of the first default. *See e.g., Pan-Am. Life Ins. Co. v. Invex Holdings, N.V.*, No. 96 C 4565, 1996 WL 734692, at *5 (N.D. Ill. Dec. 19, 1996) (although buyer defaulted on promissory note in 1981 "the statute of limitations does not begin to run until the note becomes mature" in 2003); *Pan-Am. Life Ins. Co. v. Invex Holdings, N.V.*, No. 96 C 4565, 1997 WL 72078, at *3 (N.D. Ill. Feb. 14, 1997) (under Illinois law, "the statute of limitations does not start to run until the entire mortgage is due."); *see also Bird v. Real Time Resolutions, Inc.*, 183 F. Supp. 3d 1058, 1063 (N.D. Cal. 2016) (analyzing identical HECLA with Countrywide and concluding that absent acceleration, the statute of limitations period began on the date of maturity).

However, if the debt is accelerated, the statute of limitations period begins on the date of acceleration. *See Mazur v. Stein*, 41 N.E.2d 979, 982 (Ill. App. Ct. 1942) (although bonds were not payable until 1936, the statute of limitations began in 1931 when the creditor accelerated payment); 735 ILCS 5/13-206 ("[A] cause of action on a promissory note payable at a definite date accrues on the due date or date stated in the promissory note or the date upon which the promissory note is accelerated.").

Manlangit objects that the HECLA is not a Note but acknowledges that "'[w]here a money obligation is payable in installments, a separate cause of action accrues on, and the statute of limitations begins to run against, each installment as

9

it becomes due.'" (Dkt. 53 at 15, citing *Hassebrock v. Ceja Corp.*, 29 N.E.3d 412, 422 (Ill. App. Ct. 2015)). Moreover, if a creditor accelerates the debt, the statute of limitations begins to run on the unmatured debt installments on the day of the default on which the election is based. *Thread v. Gage Co.*, 451 N.E.2d 1292, 1297 (Ill. App. Ct. 1983) (citing 18 S. Williston, A Treatise on the Law of Contracts § 2026C (3d ed. 1978)). Thus, default on one installment payment does not start the statute of limitations as to *all future* installments, unless the creditor exercises her decision to accelerate following the default. The court rejects Manlangit's argument that the statute of limitations on the entire debt obligation began when he defaulted in 2013.

The terms of the HECLA support this conclusion. Manlangit has until the end of the Repayment Period—August 25, 2025 or August 30, 2030[3] depending on whether the initial Draw Period was extended—to pay off his debt, unless the creditor exercises its option to accelerate the debt at which point the entire sum is immediately due. Accepting Manlangit's position would render the acceleration clause, intended to protect the creditor, into a sword for the debtor. While the creditor *could have* legally accelerated the debt in 2013 when Manlangit defaulted on his payments, the failure to do so cannot be used against the creditor as grounds to start the statute of limitations. *Pan-Am.*, 1996 WL 734692, at *5 ("'A provision in a note and mortgage that upon default in the payment of interest, the entire debt shall immediately become due and payable is permissive only. It does not of itself cause

---

[3] The FAC does not allege whether the initial Draw Period was extended. The statements sent by FCI, (Dkt. 30 at Appendix C, D, G), indicate that the maturity date of the HECLA is August 25, 2030, suggesting that the initial Draw Period was extended.

the notes to mature, so as to start the running of the statute of limitations.'") (quoting *Watts v. Hoffman*, 77 Ill. App. 411, 413 (Ill. App. Ct. 1898); *Thread*, 451 N.E.2d at 1297 ("The [acceleration] option is intended for a creditor's benefit and, therefore, a creditor's failure to take advantage of the optional provision does not self-execute it to a creditor's detriment with respect to the running of the statute of limitations.")

Applying these principals to the HECLA, the statute of limitations which would otherwise have begun in 2025 or 2030 when the loan matured, began on March 2, 2018—the date on which PPR accelerated the HECLA. (Dkt. 30 at Appendix. E, 7).[4] Consequently, the Defendants' attempts to collect on the HECLA in late 2018 and 2019 were not time-barred. The claims in Counts I - III based on collection of a time-barred debt are dismissed.

## B. Remaining Claims against PPR and Barham Defendants (Counts I, III, & IV)

The remaining claims against PPR and the Barham Defendants are all premised on a violation of the ICAA, which prohibits the collection of debt from Illinois residents with a license. 225 ILCS 425/1 *et seq*. Count I alleges that the Barnham defendants violated the FDCPA by filing suit to collect a debt on behalf of an unlicensed debt collector (PPR). The Barham defendants cannot violate the FDCPA by failing to comply with the ICAA, however, because attorneys are expressly exempted from the requirements of the ICAA. 225 ILCS 425/2.03(5); *Gibbs v. Blitt &*

---

[4] The acceleration date is indicated in PPR's foreclosure complaint attached as Appendix E to Manlangit's complaint. Manlangit does not dispute in his opposition brief that the HECLA was accelerated on March 2, 2018.

*Gaines, P.C.*, 6 N.E.3d 755, 759 (dismissing FDCPA claim against law firm that filed a collection suit on behalf of an allegedly unlicensed debt collection agency in violation of the ICAA).[5] The Barham defendants are thus dismissed entirely from Count I.

In its briefing, Manlangit also asserts an FDCPA claim against PPR for attempting to collect a debt as an unlicensed buyer in violation of the ICAA. PPR argues that regardless of the licensing requirements under state law, it is not a "debt collector" within the meaning of the FDCPA. The Court finds it unnecessary, however, to address PPR's substantive arguments because the allegations on their face fail to allege an FDCPA claim against PPR on the basis of collecting debt as an unlicensed buyer. Specifically, Count I states: "Defendants filed suit against plaintiff on a time-barred debt and *on behalf of an unlicensed debt buyer, PPR IV.*" (Dkt. 30 at ¶ 109) (emphasis added). The class allegations in support of Count I further state that "[t]he class consists of (a) all individuals (b) whom the *attorney defendants* sued (c) in an Illinois court (d) *for an unlicensed debt buyer* …." (*Id.* at ¶ 112) (emphasis added). Thus, while the FAC establishes that PPR was an unlicensed buyer, the allegations regarding a potential ICAA violation in Count I are clearly aimed at the Barham Defendants, and not PPR. Count I is dismissed as to PPR without prejudice.

---

[5] Manlangit argues that the Illinois Supreme Court's decision in *LVNV Funding, LLC v. Trice* supersedes the court's decision in *Gibbs.* 32 N.E.3d 553 (Ill. 2015). *LVNV*, however, did not address an ICAA claim brought against an attorney. *Id.* It held that *debt buyers* must be licensed pursuant to the ICAA even though they hire attorneys to collect debt on their behalf and that a judgment obtained by an unlicensed buyer through that attorney is voidable, not void. *Id.* In fact, Illinois courts have held post-*LVNV* that attorneys who collect debt on behalf of others are exempt from the ICAA. *See McGlasson v. Blitt & Gaines, P.C.*, NO. 4-19-0497, 2020 WL 1686236, at *5 (Ill. App. Ct. 2020).

By contrast, Counts III and IV clearly allege that *PPR* violated the ICAA by attempting to collect debt without a license. In response to those claims, PPR argues (1) it did not violate the ICAA because it attempted to collect a debt via interstate communication and (2) it does not qualify as a debt collector within the meaning of the ICAA because the foreclosure action did not seek a deficiency judgment. As to the first argument, it is too early in the proceedings for the Court to determine whether PPR has complied with the ICAA. Factual issues remain as to whether PPR's foreclosure action constitutes directly attempting to collect a debt in Illinois, which would violate the Act, or merely attempting to do so via interstate communication from their office in Pennsylvania, which may insulate them from liability under the Act. At this stage, the Court accepts all well-pleaded facts as true. Manlangit has alleged that PPR was unlicensed in Illinois and its home state of Pennsylvania and attempted to collect money from Manlangit, an Illinois resident, through a foreclosure action and mailed statements sent by its agent FCI. (Dkt. 30 at ¶¶ 12; 19-20; 36). These allegations are sufficient to state a claim under the ICAA.

As to the latter argument, although the foreclosure action did not seek a deficiency judgment, the FAC alleges that PPR, during the pendency of the foreclosure, attempted to collect money through its agent, FCI, in a mailed statement seeking payment of debt. (Dkt. 30 at ¶ 36; 88-89). Plaintiff also alleges that under Illinois law all foreclosure actions contain "deemed allegations" that, if a court orders one, requires an accounting, and, depending on the accounting, sums could be due and owing. (*Id*. at ¶ 80). Furthermore, foreclosures in Illinois allow for the award of

fees and costs. (*Id*.) Accordingly, PPR requested "[a] judgment for attorney's fees, costs, and expenses" in its foreclosure complaint. (*Id*. at Exhibit E, 11). At this pleading stage, the Court is unable to determine that PPR is not a debt collector under the ICAA. PPR's motion to dismiss Counts III and IV is denied.

### C. FCI Collecting Improper Amounts (Count II)

FCI's monthly statements provide Manlangit with an option to pay his debt by telephone or online for a fee ($18 and $15 respectively). Manlangit claims that these optional service fees violate § 1692f which prohibits a debt collector from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

FCI argues that the optional service fees are not "incidental to the principal obligation" under the HECLA; rather, they are completely unrelated to Manlangit's debt obligations and Manlangit is free to avoid them by paying via mail. *Id.* This Court considered the same argument in *Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.* in which plaintiff challenged a $7.50 service fee for paying via telephone under § 1692f(1). No. 04 C 5759, 2005 WL 8153247 (N.D. Ill. Feb. 3, 2005). The Court observed that the FDCPA prohibits "collect[ing] *any* fee incidental to the claimed debt unless expressly authorized by the agreement creating the debt or permitted by law" and "does not specify whether that fee must be voluntary or involuntary." *Id.* at *3 (emphasis in original). Given that the Act favors a liberal construction in the consumer's interest, and that "[a]lmost by definition, a fee associated with an option

for paying the debt is 'incidental' to a claimed debt," the Court concluded that the service fee was "incidental" so as to fall within the scope of § 1692f(1). *Id.* at *3-4. Distinguishing cases from other circuits in which courts held similar fees to be outside the scope of § 1692f(1), the *Longo* court observed that in those cases the debt collector was merely passing along a third-party's fee and so the service fee would not be paid to the debt collector. *Id.* By contrast, the service fee in *Longo* was collected by the defendant debt collector. *Id.*

The Court agrees with the reasoning in *Longo*. The plain language of the FDCPA as well as the liberal construction afforded it in the consumer's favor, lead the Court to conclude that the optional service fees at issue are "incidental" within the meaning of § 1692f(1). Further, it is indeterminable from the FAC whether the service fees were an attempt to pass off costs or an impermissible method of increasing compensation. At this stage, this ambiguity should be resolved in Manlangit's favor.

Having concluded that the service fees are "incidental" to Manlangit's debt, § 1692f(1) prohibits the collection of that fee unless it is expressly authorized by the agreement creating the debt or permitted by law. FCI argues that Sections 4A and 15 of the HECLA, which provide that collection costs are included in the amount due, provide the requisite contractual hook for the collection of service fees. Manlangit contends, however, that service fees are not within the meaning of "collection costs," which he asserts are costs incurred by the creditor as a result of the debtor's default. At this stage in the proceedings, the Court declines to engage in contractual

interpretation. As the HECLA does not explicitly allow for the collection of service fees, it is plausible that the definition of "collection costs" under the HECLA is as narrow as Manlangit asserts. Thus, Manlangit has adequately alleged that the HECLA does not expressly allow for the collection of service fees.

Finally, the Court must consider whether charging optional service fees is permitted under Illinois law. Manlangit argues that FCI's service fees violate 225 ILCS 425/9(a)(33) which prohibits "[c]ollecting or attempting to collect any interest or other charge or fee in excess of the actual debt unless such interest or other charge or fee is … expressly authorized by law …." Courts in this district have interpreted this provision to mean that § 1692f(1) only allows the collection of additional amounts if that amount is *expressly* permitted by Illinois law—"if state law neither affirmatively permits nor expressly prohibits collection of an amount, the amount can only be collected if the customer expressly agrees to it in the contract." *Longo*, 2005 WL 8153247, at *5; *Ozkaya v. Telecheck Servs., Inc.*, 982 F.Supp. 578, 586 (N.D. Ill. 1997). The Court is unaware of any Illinois statute expressly permitting the collection of service fees by a debt collector for paying debt online or via telephone. FCI does not alert the Court of such a statute, but cites to *Messina v. Green Tree Servicing, LLC*, holding that charging a $12.00 service fee for making mortgage payments by telephone did not violate the Illinois Consumer Fraud Act's ban on "'unfair or deceptive acts or practices'." 210 F.Supp.3d 992, 1003-06 (N.D. Ill. 2016) (citing 815 Ill. Comp. Stat. 505/2). The court's conclusion that the fee did not violate the ICFA, however, is not the same as a conclusion that the statute expressly permits such a

fee. Indeed, the *Messina* court acknowledged that the fee could violate the FDCPA if it was pocketed by the debt collector and not passed through to a third-party processor. *Id.* at 1005.[6] Moreover, several courts in this district have concluded that similar service fees are not expressly authorized by Illinois law. *See e.g., Acosta v. Credit Bureau of Napa Cty.*, No. 14 C 8198, 2015 WL 1943244, at *4 (N.D. Ill. Apr. 29, 2015) ($14.95 credit card processing fee); *Longo*, 2005 WL 8153247, at *5 ($7.50 fee for paying by telephone); *Ozkaya*, 982 F.Supp. at 586 ($25.00 service fee for stop payment); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1140 (N.D. Ill. 1998) ($25.00 service fee for stopped check). Thus, Manlangit has plausibly alleged that FCI's service fees violated the FDCPA.[7]

### D. Article III Standing

The analysis, however, does not end there. FCI argues that even if Manlangit has stated a plausible claim that the service fees violate the FDCPA, Count II should still be dismissed because Manlangit has failed to allege an injury-in-fact necessary for Article III standing. To establish Article III standing, a "plaintiff must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019). An injury in fact is "an invasion of a legally protected interest that is

---

[6] Manlangit distinguishes *Messina* by noting that the defendant in *Messina* was a residential mortgage licensee rather than a debt collector subject to 225 ILCS 425/9(a)(33). FCI counters by claiming that it is also a residential mortgage licensee under Illinois law and is thus exempt from the requirements of 225 ILCS 425/9(a)(33). (Dkt. 58 at 13). On a motion to dismiss the Court views all facts in light most favorable to the Plaintiff.

[7] Manlangit also challenges the service fees based on §1692e. Because a violation of §1692f(1) constitutes a violation of §1692e, the Court declines to separately analyze the propriety of service fee charges under §1692e. *Longo*, 2005 WL 8153247, at *6.

concrete and particularized," such that it "actually exist[s]" and "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotations and citations omitted). Simply alleging a violation of the FDCPA is insufficient to establish standing: "a bare procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III." *Id.* at 1549.

Recently, in *Casillas v. Madison Avenue Associates, Inc.*, the Seventh Circuit applied *Spokeo* to an alleged FDCPA violation and concluded that plaintiff lacked Article III standing. 926 F.3d at 333-39. In *Casillas*, the debt collector sent the plaintiff consumer a debt-collection letter describing the process that the FDCPA provides for verifying a debt but neglected to specify that the consumer had to communicate in writing to trigger the statutory protections, as is required under 15 U.S.C. § 1692g. *Id.* The Seventh Circuit noted that "[t]he only harm that [plaintiff] claimed to have suffered ... was the receipt of an incomplete letter" and concluded "that [this] is insufficient to establish federal jurisdiction." *Id.* at 331-32. The Court explained that plaintiff did not allege that she tried to dispute or verify her debt orally or had doubts that that she owed the debt, and "was not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them." *Casillas*, 926 F.3d at 334. The Court, however, distinguished a debt collector's "obligation to provide substantive information from its obligation to give notice of statutory rights," finding that the failure to comply with a provision that entitles

18

plaintiff "to receive and review *substantive* information" may be sufficient to confer standing. *Id.* at 334-35 (emphasis in original).

Courts in this district interpreting *Casillas* have since found "that incomplete debt collection letters often concern notice to a consumer of her statutory rights, while deceptive or confusing debt collection letters involve a consumer's right under the FDCPA to receive substantive information about her debt." *Africano-Domingo v. Miller & Steeno, P.C.*, No. 19 CV 401, 2020 WL 247377, at *3 (N.D. Ill. Jan. 16, 2020) (finding plaintiff had Article III standing where plaintiff challenged dunning letter as deceptive); *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2019 WL 4059154, at *3 (N.D. Ill. Aug. 28, 2019) (finding plaintiff had Article III standing and distinguishing *Casillas* because "this case concerns not an incomplete letter, but a deceptive letter."); *Sykes v. Veripro Sols., Inc.*, No. 19-CV-7897, 2020 WL 4926547, at *3 (N.D. Ill. Aug. 21, 2020) (finding plaintiff had Article III standing because plaintiff "does not simply allege that he was deprived of notice of statutory rights but affirmatively asserts that the [dunning] letter was deceptive and misleading.")

Manlangit alleges that FCI's letter attempts to charge improper fees.[8] He also alleges that FCI, as PPR's agent, sent a monthly statement providing for optional service fees *during the pendency of the foreclosure action*, establishing at least a

---

[8] FCI argues that because Manlangit did not pay the challenged optional service fees, he fails to allege a concrete and particularized injury. The *Spokeo* Court, however, made clear that an injury need not be "tangible" to confer Article III standing, noting that Congress' "judgment is also instructive and important" when "determining whether an intangible harm constitutes injury in fact". *Spokeo*, 136 S. Ct. at 1549. Here, the FDCPA allows a plaintiff to collect statutory damages in the absence of actual damages, so the court's focus in assessing Article III standing "is on the debt collector's misconduct, not … whether the consumer has paid an invalid fee …." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (plaintiff who received collection letter making an allegedly unlawful demand for a mandatory collection fee had Article III standing even though plaintiff did not pay the fee).

minimal connection between the time and money Manlangit spent defending against the foreclosure action and FCI's conduct. (*Id.* at ¶¶ 36; 88; Appendix G). The Court finds these allegations sufficient to confer Article III standing, particularly because Manlangit challenges the service fees as improper.

The Court reaches this decision in reliance on the Seventh Circuit's recent decision in *Gomez v. Cavalry Portfolio Servs., LLC*, 962 F.3d 963 (7th Cir. 2020). There, plaintiff challenged the defendant's allegedly unauthorized attempt to collect interest on his debt through a series of dunning letters under § 1692e. *Id.* at 965-66. Although observing that "[t]he complaint does not identify a concrete harm that any of the three letters caused, which makes standing to sue doubtful[ ]" under *Spokeo* and *Casillas*, the Court nonetheless found plaintiff had Article III standing because "some decisions of this and other appellate courts have found, or assumed, that standing exists when the dunning letter allegedly violates § 1692e." *Id.* at 966. Because defendant did not raise the issue, the Court chose to "take circuit law as we found it, without inquiring whether our older cases are consistent with *Spokeo* and *Casillas*." *Id.*

In light of *Gomez* and the decisions of district courts post-*Casillas*, the Court concludes that because Manlangit challenges the service fees as deceptive under §1692e, he has alleged enough to establish Article III standing. Courts in this district and others have similarly found that challenges to optional service and other such fees under §§ 1692e and §1692f give rise to cognizable harm under Article III. *See Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, No. 17 CV 773, 2017 WL

11350966, at fn.3 (N.D. Ill. Oct. 10, 2017) (plaintiff who challenged credit card convenience fee under §§ 1692e and 1692f had Article III standing because "a plaintiff who receives a deceptive communication allegedly in violation of the FDCPA has articulated a concrete, cognizable injury, even if the plaintiff incurred no actual damages."); *McLain v. Head Mercantile Co.*, No. CV 16-780-JWD-RLB, 2017 WL 3710073, at \*15 (M.D. La. Aug. 28, 2017) (plaintiff who challenged convenience fee for payment of checks by phone under §§ 1692e and 1692f had Article III standing); *Thomas v. John A. Youderian Jr., LLC*, 232 F. Supp. 3d 656, 671 (D.N.J. Feb. 3, 2017) (plaintiff who challenged credit card convenience fee under §§ 1692e and 1692f had Article III standing); *Fuentes v. AR Res., Inc.*, No. CV157988FLWLHG, 2017 WL 1197814, at \*6 (D.N.J. Mar. 31, 2017) (same). Because Manlangit has adequately alleged Article III standing, Count II survives regarding the allegedly unauthorized service fees in FCI's statements.

## **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part. Count I against PPR and the Barham Defendants is dismissed. Count II against FCI is dismissed to the extent it asserts a violation of the FDCPA for collecting on a time-barred debt but survives to the extent it asserts a violation of the FDCPA for collecting optional service fees. Count III against PPR is dismissed to the extent it asserts a violation of state law by filing suit on a time-barred debt, but otherwise survives. Count IV against PPR may proceed.

E N T E R :

Dated: September 16, 2020

_____

MARY M. ROWLAND
United States District Judge